**Michael VALLS, Appellant,**

v.

**JOHANSON & FAIRLESS, L.L.P., et al., Appellees.**

No. 14–08–00449–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 3, 2010.

Herbert W. Fortson, Houston, for appellant.

J. Mike Johanson, Sugarland, Mark Wham, Spring, Joe House, Richmond, for appellees.

Panel consists of Justices YATES, BOYCE, and SULLIVAN.

## OPINION

KENT C. SULLIVAN, Justice.

Appellant, Michael Valls, agreed to settle a business dispute with his former employer and business partner—appellees Prime Directional Systems, L.L.C. ("Prime") and Ernie Parker, respectively—by accepting a contingent financial interest in their ongoing lawsuit against an unrelated entity. When that lawsuit settled, however, Valls was left out of the distribution of settlement proceeds. He sued Prime and Parker for breach of the settlement agreement and also sued his opponents' attorneys, who had drafted the agreement, for professional negligence, breach of fiduciary duty, conspiracy to defraud, and negligent misrepresentation.

The trial court granted summary judgment on all of appellant's claims, prompting this appeal. We hold Prime and Parker did not demonstrate their entitlement to judgment as a matter of law; therefore, we reverse the summary judgment as to them and remand Valls's breach-of-contract claims for further proceedings. However, because Valls has not raised a valid cause of action permitting him to sue opposing counsel, we affirm that portion of the summary judgment.

## I.

### BACKGROUND

Appellant Valls was a founding member of Prime Directional Systems, L.L.C., and also served as its president until his employment was terminated for reasons that

are unclear. He sought benefits under a severance package that allegedly was to pay him three years' salary, and also asked Prime to repay a promissory note allegedly owed to him.

In response, Prime proposed a different agreement to settle his claims. At that time, Prime and Parker were embroiled in other litigation (hereafter, the "Tensor lawsuit") against an unrelated entity, Tensor/Allied Signal, from whom they were seeking damages for fraud and misrepresentation. To compromise his employment claims, Valls accepted a contingent interest offered by Prime and Parker in any recovery obtained in their ongoing suit against Tensor.

The parties' agreement (hereafter, the "Settlement Agreement") consists of a three-page letter written by appellee Mike Johanson—one of the attorneys representing Prime and Parker—and addressed to Valls's attorney, Steve Bryant. The letter recites a somewhat complicated arrangement for the division of any money recovered in the Tensor lawsuit. In summary, Valls was to receive the first $500,000— and an additional percentage of any amount in excess of $500,000—of any "net recovery." However, the parties dispute the manner in which "net recovery" should be calculated. Their disagreement stems from the fact that the Settlement Agreement proposes one formula for this calculation, but a contingent fee agreement (hereafter, the "CFA") between Prime, Parker, and their attorneys recites a different method for determining "net recovery." The difference between these two formulas is not inconsequential.

Specifically, two paragraphs at the end of the Settlement Agreement describe the calculation of "net recovery," using hypothetical numbers representing possible verdicts and lawsuit expenses. In those sections, "net recovery" is said to be calculated by deducting lawsuit expenses *first* and attorney's fees *second*. The remainder would then be split by Valls, Prime, and Parker according to the earlier terms of the Settlement Agreement. However, the CFA reverses the order of those deductions. Under that contract, "net recovery" was to be determined by withdrawing attorney's fees *first* and lawsuit expenses *second*.[1]

Under either document, attorney's fees were listed at forty percent. However, the order in which attorney's fees and lawsuit expenses were to be deducted is of some significance. Under the Settlement Agreement, the attorneys would effectively share the burden of forty percent of lawsuit expenses because those costs were to be paid before attorney's fees; under the CFA, however, the attorneys would not participate in paying any expenses. In this case, because expenses ultimately exceeded $500,000, the seemingly minor difference in wording between these two contracts actually resulted in a dramatically different outcome for Valls.

The Tensor lawsuit settled for $1,600,000 and, according to appellees, lawsuit expenses totaled $571,037.44. Given these figures, Valls's recovery, if calculated under the Settlement Agreement, would be $511,737.75.[2] However, he actually received *no* money because the lawsuit proceeds were instead distributed according

---

1. In their motion for summary judgment, Prime and Parker admitted, "[I]n the settlement agreement ... the order of the deduction of attorney's fees and expenses from the total recovery was inadvertently reversed" from the method described in the CFA.

2. This number may be derived by deducting lawsuit expenses of $571,037.44 from the total $1,600,000 settlement, producing a remainder of $1,028,962.56. After removing forty percent of that amount for attorney's fees, the remaining sixty-percent share— $617,377.54—was left to be divided among

to the formula contained in the CFA.[3] After Valls questioned the manner in which the settlement proceeds were disbursed, the appellees—Prime, Parker, and their attorneys[4]—filed a declaratory judgment action in district court. Valls counterclaimed against Prime and Parker for breach of contract, and also sued the Lawyers for negligence, conspiracy to defraud, breach of fiduciary duty, and negligent misrepresentation.

The trial court granted summary judgment on Valls's counterclaims, which were then severed into a separate lawsuit. After that judgment became final, Valls timely filed this appeal. Raising two issues, Valls challenges summary judgment on his contract claims against Prime and Parker and his tort claims against the Lawyers.

## II.

### Standard of Review

We review the trial court's summary-judgment order under well-established

standards. *See Seidner v. Citibank (S.D.) N.A.*, 201 S.W.3d 332, 334 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). To prevail by summary judgment, a movant must prove its right to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). If the evidence demonstrates the movant's entitlement to summary judgment, the burden then passes to the non-movant to raise a genuine issue of material fact to defeat the motion. *See Va. Power Energy Mktg., Inc. v. Apache Corp.*, 297 S.W.3d 397, 402 (Tex.App.-Houston [14th Dist.] 2009, pet. denied).

■■■ In this case, Valls did not respond to the appellees' motion for summary judgment; as a result, he may challenge only the legal sufficiency of the summary-judgment grounds expressly raised in the motion:[5]

The trial court may not grant a summary judgment by default for lack of an

---

Valls, Prime, and Parker. According to the Settlement Agreement, Valls would receive the first $500,000 of this "net recovery," as well as ten percent of the remaining $117,377.54, or $11,737.75. Thus, his total recovery under the Settlement Agreement would be $511,737.75.

3. Forty percent of the total was withdrawn for attorney's fees, leaving $960,000. After lawsuit expenses of $571,037.44 were deducted, the remaining "net recovery" to be shared between Valls, Prime, and Parker totaled only $388,962.56. However, the parties' agreement recited that, if Valls were to receive less than $500,000, the Settlement Agreement would be treated as null and void so that Valls would receive no portion of the Tensor settlement but could still pursue his employment-related claims against Prime and Parker. Because the "net recovery" under the CFA was less than $500,000, Prime and Parker invoked the clause in the Settlement Agreement and Valls received nothing.

4. The lawyer appellees include Johanson and his firm, Johanson & Fairless, L.L.P., Joe

House, Mark Wham, and their firm, House & Wham, L.L.P. To the extent necessary, we will sometimes refer to these parties collectively as the "Lawyers."

5. In their first reply point, appellees contend Valls waived his right to appeal from the summary judgment by failing to respond to the motion. In support, they cite one of the trial court's local rules which states, "Failure to file a response [to a motion] may be considered a representation of no opposition." Fort Bend (Tex.) Civ. Dist. Ct Loc. R. 3.3.2.

However, although a district court may enact local rules governing practice in that court, a local rule may not conflict with the Texas Rules of Civil Procedure and cannot be used to decide the merits. *See* Tex.R. Civ. P. 3a; *Approximately $14,980.00 v. State*, 261 S.W.3d 182, 188–89 (Tex.App.-Houston [14th Dist.] 2008, no pet.); *Approximately $1,589.00 v. State*, 230 S.W.3d 871, 874 (Tex.App.-Houston [14th Dist.] 2007, no pet.). We cannot apply Local Rule 3.3.2 in such a fashion as to trump Rule 166a(c), which obligates the summary-judgment *movant* to prove his entitle-

answer or response to the motion by the non-movant when the movant's summary judgment proof is legally insufficient. The movant still must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law. Summary judgments must stand on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right.

While it would be prudent and helpful to the trial court for the non-movant always to file an answer or response, the non-movant needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient [a]s a matter of law to support summary judgment.

*City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979) (footnote omitted) (citations omitted); *see Tello v. Bank One, N.A.,* 218 S.W.3d 109, 118–19 (Tex.App.-Houston [14th Dist.] 2007, no pet.).

On appeal, we are to review the summary-judgment motion and evidence *de novo. See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). Thus, we must consider the evidence in the light most favorable to the non-movant—here, Valls—while indulging reasonable inferences and resolving doubts in this favor. *See City of Keller v. Wilson,* 168 S.W.3d 802, 824 (Tex.2005); *Va. Power,* 297 S.W.3d at 402.

---

ment to summary judgment, or to decide the merits of Valls's appeal. *See* Tex.R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Approximately $14,980.00,* 261 S.W.3d at 189;

# III.

## ANALYSIS

In his first issue, Valls challenges the summary judgment disposing of his breach-of-contract action against Prime and Parker. His second issue is devoted to the summary judgment on his tort claims against the Lawyers. We will address each category of claims separately.

### A. Breach–of–Contract Claims against Prime and Parker

█ In their motion for summary judgment, Prime and Parker argued they did not breach the Settlement Agreement, as a matter of law, because they complied with its *material* terms. Stated differently, they contend some portions of the Settlement Agreement are enforceable but others are not. In their view, Valls cannot enforce the following provisions that describe, using hypothetical numbers, the calculation of Valls's share of any recovery:

> By way of example, assuming a $75,000,000 verdict and/or settlement in favor of Prime and Ernie Parker, assuming $500,000 in out-of-pocket expenses *(which come "off the top ")*,[6] the net to the clients would be 60% of $74,500,000, or $44,700,000. The first $500,000 of that $44,700,000 would go directly to Mr. Valls. Mr. Valls would then receive ten percent (10%) of the next $5,000,000 in "net" recovery to the client ($500,000). Mr. Valls would then receive seventeen percent (17%) of the remaining "net" recovery to the client ($39,200,000) for a total of $6,664,000.

*Approximately $1,589.00,* 230 S.W.3d at 874. Accordingly, we overrule appellees' first reply point.

6. Emphasis added.

Mr. Valls'[s] total recovery under that scenario would be $7,664,000.

As we discussed, we feel very strongly about this lawsuit and expect a substantial recovery either by way of settlement or judgment; however, for purposes of illustration only, if we were to assume a $20,000,000 verdict and/or settlement in favor of Prime and Ernie Parker, assuming $500,000 in out-of-pocket expenses, the "net" to the clients would be sixty percent (60%) of $19,500,000 or $11,700,000. Under this scenario, Mr. Valls would receive the first $500,000 of the money due to the clients, and then would receive an addition [sic] ten percent (10%) of the next $5,000,000 ($500,-000) along with seventeen percent (17%) of the final $6,200,000 ($1,054,000) for a total of $2,054,000.

■■■ Prime and Parker concede they did not comply with these distribution provisions. However, they contend these paragraphs should be disregarded as unenforceable because they were introduced only as an "example" or "illustration."[7] In response, Valls asks us to interpret the Settlement Agreement to give effect to all of its provisions, including the paragraphs quoted above. We will consider this dispute under general contract-interpretation principles.

■■■ Our primary goal in interpreting a contract, of course, is to ascertain and give effect to the parties' intent as expressed in the contract. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 30 (Tex.2008); *Ayres Welding Co. v. Conoco, Inc.*, 243 S.W.3d 177, 180 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). We are to presume the parties intended for every clause to have some effect. *See Heritage Res., Inc. v. Nations-Bank*, 939 S.W.2d 118, 121 (Tex.1996). Therefore, we must examine the entire contract with the goal of harmonizing and giving effect to all provisions so that none is rendered meaningless. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006); *Ayres Welding*, 243 S.W.3d at 181.

In their brief, Prime and Parker cite no authority, nor have we found any, suggesting we can disregard, as a meaningless "example," the portion of the Settlement Agreement that contains the formula for calculating Valls's share of any recovery. In their motion for summary judgment, Prime and Parker referred to *Enterprise Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547 (Tex.2004), *Ogden v. Dickinson State Bank*, 662 S.W.2d 330 (Tex.1983), and *Lavaca Bay Autoworld, L.L.C. v.*

---

**7.** In addition, Prime and Parker claim a defect in Valls's notice of appeal precludes him from complaining about the summary judgment on his breach-of-contract claims. Specifically, they argue Valls was required to file a separate notice of appeal as to each ruling he intended to challenge on appeal, including an interlocutory order from April 2007 in which the trial court ruled the Settlement Agreement's distribution provisions were unenforceable. We disagree. A notice of appeal need not identify every adverse interlocutory ruling the appellant intends to challenge; instead, the notice must state only the date of the judgment or order from which he appeals—in this case, the order granting summary judgment. *See Perry v. Cohen*, 272

S.W.3d 585, 587 (Tex.2008) (citing Tex.R.App. P. 25.1). We also note, parenthetically, that even if appellees' novel interpretation of the rules were actually correct, dismissal of appeals for harmless procedural defects is disfavored. *See id.; Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex.1997); *see also In re Brookshire Grocery Co.*, 250 S.W.3d 66, 73 (Tex.2008) (orig. proceeding) (Hecht, J., dissenting) ("This court has labored long and hard to remove as many procedural traps from our rules as possible. Litigants are entitled to have their disputes resolved on the merits, not on unnecessary and arcane points that can sneak up on even the most diligent of attorneys.") (citation omitted).

*Marshall Pontiac Buick Oldsmobile*, 103 S.W.3d 650 (Tex.App.-Corpus Christi 2003, no pet.), for the proposition that courts may disregard some contract provisions in favor of other conflicting clauses that contribute more meaningfully to the parties' agreement. *See Lavaca Bay*, 103 S.W.3d at 659.

However, those authorities are not instructive here because they address a different situation in which the contract contains two clauses that are in apparent conflict, a scenario not present here. *See Enterprise Leasing*, 156 S.W.3d at 549 (instructing courts, *in the event of a conflict*, to give preference to operative clauses rather than the title of a contract provision); *Ogden*, 662 S.W.2d at 332 ("[T]he Court will not strike down any portion of the contract *unless there is an irreconcilable conflict*.") (emphasis added); *Lavaca Bay*, 103 S.W.3d at 659 ("*[W]hen differences exist between terms in the same instrument*, those that contribute most essentially to the agreement are entitled to greater consideration.") (emphasis added). Here the Settlement Agreement contains no such internal conflict because it recites only one method for calculating "net recovery." [8] Therefore, because the cases cited by Prime and Parker in their summary-judgment motion pertain only to inconsistent terms within the same agreement, they do not apply here.

Instead, the summary-judgment evidence reveals a conflict only between the inconsistent formulas recited in two separate documents: the Settlement Agreement, to which Valls was a party, and the CFA, to which he was not. However, we may not consider the CFA as a part of the agreement between Prime, Parker, and Valls because that document is neither signed by Valls nor referred-to in the Settlement Agreement.[9] *See Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex.1968); *Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 693 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Cavazos v. Cavazos*, 941 S.W.2d 211, 214 (Tex.App.-Corpus Christi 1996, writ denied). To the contrary, the Settlement Agreement indicates Valls's recovery would be as provided by "the terms and conditions of *this Agreement*." [10]

Therefore, properly applying contract-interpretation principles, we must construe the Settlement Agreement to give effect to all provisions so that none are rendered meaningless, including the paragraphs describing the calculation of "net recovery." *See Seagull Energy*, 207 S.W.3d at 345; *Heritage Res.*, 939 S.W.2d at 121; *Ayres Welding*, 243 S.W.3d at 181. Because Prime and Parker acknowledge they did not comply with those provisions, they were not entitled to summary judgment from Valls's breach-of-contract claims. *See* Tex.R. Civ. P. 166a(c); *Nixon*, 690 S.W.2d at 548. Accordingly, we sustain Valls's first issue and turn to his tort claims against the Lawyers.

### B. Tort Claims against Opposing Counsel

8. During oral argument, appellees' counsel conceded the Settlement Agreement contains no other method for calculating "net recovery" except for the formula recited in the "example" and "illustration" paragraphs.

9. Valls argues in the alternative that, if the Settlement Agreement and CFA were read together as one document, the conflict between their respective formulas creates an ambiguity to be resolved by the trier of fact rather than by summary judgment. However, because we cannot properly interpret these two documents together, we need not reach this alternative argument.

10. Emphasis added.

■ Valls also filed suit against the attorneys for Prime and Parker, accusing them of wrongdoing in connection with the preparation of the Settlement Agreement and distribution of settlement proceeds. Some of his chosen legal theories—professional negligence and breach of fiduciary duty—require proof of an attorney-client relationship between Valls and opposing counsel, an allegation the Lawyers deny. They successfully moved for summary judgment on these claims, arguing they did not agree to represent Valls and therefore owed no legal duty to him. *See, e.g., Alpert v. Crain, Caton & James, P.C.,* 178 S.W.3d 398, 405 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) ("An attorney in Texas ... is not liable to non-client third parties for legal malpractice."). Valls appeals from that ruling.[11]

Appellant also insists that, even in the absence of an attorney-client relationship, he may still sue opposing counsel for their allegedly negligent misrepresentations in the Settlement Agreement. In response, the Lawyers argue Valls could not *justifiably* rely, as a matter of law, on statements made by opposing counsel in an adversarial setting. The trial court agreed with the Lawyers and granted summary judgment as to negligent misrepresentation.

## 1. Professional Negligence and Breach of Fiduciary Duty

■ We begin with appellant's accusations of professional negligence and breach of fiduciary duty. Both legal theories require proof that the defendant in fact owed some legal duty to the plaintiff arising from the relationship between the parties. *See Lundy v. Masson,* 260 S.W.3d 482, 501 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (noting the requisite elements of a breach-of-fiduciary-duty claim include a fiduciary relationship between the plaintiff and defendant); *Rangel v. Lapin,* 177 S.W.3d 17, 22 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) ("A legal malpractice action is based upon negligence and requires proof of ... a legal duty[.]").

Valls seeks to overcome that evidentiary hurdle by claiming he became the Lawyers' *de facto* client when he signed the Settlement Agreement. That is, because his interests became aligned with Prime's and Parker's once he acquired a financial stake in their lawsuit, he concludes the Lawyers owed professional duties to him, too. He cites no authority, nor have we found any, suggesting an attorney owes professional duties to all those whose financial interests may be aligned with his client's. *Cf. Am. Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 844 n. 6 (Tex. 1994) (holding a liability insurer, despite its financial interest in the litigation, was not the client of the attorney hired to represent its insured). Therefore, we analyze his claim under the common law relevant to the formation of an attorney-client relationship.

■ In a general sense, an attorney-client relationship arises from a lawyer's agreement to render professional services to a client. *Greene's Pressure Treating & Rentals, Inc. v. Fulbright & Jaworski, L.L.P.,* 178 S.W.3d 40, 43 (Tex. App.-Houston [1st Dist.] 2005, no pet.). The parties should clearly and expressly agree to the nature of the work to be done

---

11. Appellant also contends the trial court erred by granting summary judgment on his conspiracy allegations against the Lawyers. However, Valls provides no substantive analysis or legal authority to support that conclusion; therefore, that argument has been waived. *See* Tex.R.App. P. 38.1(i); *Clearview Props., L.P. v. Prop. Tex. SC One Corp.,* 287 S.W.3d 132, 142 (Tex.App.-Houston [14th Dist.] 2009, pet. denied).

and the compensation to be paid. *See Hill v. Bartlette*, 181 S.W.3d 541, 547 (Tex. App.-Texarkana 2005, no pet.). Occasionally, that agreement may be implied from the parties' conduct. *See Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 265 (Tex.App.-Corpus Christi 1991, writ denied). For example, an attorney-client relationship may arise by implication if the lawyer knows a person reasonably expects him to provide legal services but does nothing to correct that misapprehension. *See Span Enters. v. Wood*, 274 S.W.3d 854, 857–58 (Tex.App.-Houston [1st Dist.] 2008, no pet.).

Whether the agreement is express or implied, however, there still must be some manifestation that *both* parties intended to create an attorney-client relationship; therefore, one party's mistaken belief is not sufficient, by itself. *See Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 254 (Tex. App.-Houston [14th Dist.] 2003, pet. denied); *Roberts v. Healey*, 991 S.W.2d 873, 880 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Accordingly, we examine the parties' statements and actions under an objective standard rather than their subjective beliefs. *See Roberts*, 991 S.W.2d at 880.

Because Valls contends the Settlement Agreement created an attorney-client relationship, we begin with that document. We note the Agreement repeatedly identifies Prime and Parker, but not Valls, as the "client" or "clients" of the Lawyers. In addition, the Agreement does not suggest any additional work the Lawyers might perform apart from their already existing plans to prosecute the claims on behalf of Prime and Parker. The contract does not obligate Valls to compensate the Lawyers for these services. *See Hill*, 181 S.W.3d at 547–48 (concluding no fact issue existed where putative client was not required to pay attorney's legal fees). The Agreement also contemplated that any contact or communication between the Lawyers and Valls would come only through the latter's attorneys.[12]

Further, the entire appellate record contains no request by Valls, or agreement by the Lawyers, to represent him at any time. *Cf. Perez*, 822 S.W.2d at 265 (holding fact issue existed where attorneys allegedly stated they were Perez's lawyers and "were going to help him"). To the contrary, the record consistently shows that, both before and after the execution of the Settlement Agreement, Valls continued to be represented by his own attorneys.

We hold Valls has not raised a genuine issue of material fact as to his professional-negligence and breach-of-fiduciary-duty claims against opposing counsel. Therefore, we overrule that part of appellant's second issue.

### 2. Negligent Misrepresentation

Notwithstanding the foregoing, a non-client still may sue an attorney for negligent misrepresentation:

> One who, in the course of his business, profession, or employment, or in any transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for

---

**12.** For example, the letter Agreement was addressed not to Valls directly, but instead to his attorney, Steve Bryant. The Agreement also recites, "Mr. Valls will be paid through the Law Office of David Groner[.]" Finally, the Agreement concludes by instructing Bryant, "If this agreement is acceptable to you and *your client*, Michael W. Valls, please have Mr. Valls execute this agreement in the space below confirming his acceptance" (emphasis added).

pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 791 (Tex.1999) (emphasis added) (quoting Restatement (Second) of Torts § 552(1) (1977)).

■■■ Here, Valls accused the Lawyers of negligently misrepresenting, in the Settlement Agreement, the method by which they planned to deduct attorney's fees and expenses from any recovery in the Tensor lawsuit. In response, the Lawyers do not quarrel with the allegation that the Settlement Agreement contains a misrepresentation. However, they argue Valls's reliance on their misrepresentation, if any, was not justified because the statements were offered in an adversarial setting.

■■■ Valls acknowledges the well-settled rule that a party may not justifiably rely on an opposing attorney's statements made in an adversarial setting, such as litigation. *See McCamish,* 991 S.W.2d at 794; *Ortiz v. Collins,* 203 S.W.3d 414, 422 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (holding party to an arms-length transaction must protect his own interests and cannot excuse his failure to do so on "mere confidence in the honesty and integrity of the other party") (citation omitted). However, he argues (1) the question of justifiable reliance is a question of fact and therefore inappropriate for summary judgment, and (2) the record does not reflect the nature of the relationship between the parties when the Settlement Agreement was prepared. On the record presented, we must reject both arguments.

Valls cites *McMahan v. Greenwood* for his broad proposition that "justification of reliance is a question of fact" to be decided by a jury. 108 S.W.3d 467 (Tex.App.-

Houston [14th Dist.] 2003, pet. denied). *McMahan,* however, does not go that far. Instead, this Court decided only that a fact issue existed as to one party's reliance on statements made *before* the parties' relationship became adversarial. "Here, *while statements made during settlement negotiations were likely made in an adversarial context,* statements made [previously] during the formation and operation of [the company] most likely were not." *Id.* at 497 (emphasis added).

Moreover, this Court has repeatedly decided issues of justifiable reliance as a matter of law. *See Ortiz,* 203 S.W.3d at 422 ("We hold that, as a matter of law, the parties' relationship remained adversarial, and thus any reliance by Ortiz on statements made by appellees *during the negotiation process* was unjustified and unreasonable.") (emphasis added); *Chapman Children's Trust v. Porter & Hedges, L.L.P.,* 32 S.W.3d 429, 443 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (affirming summary judgment because party was not justified in relying on opposing counsel's representations "given the adversarial nature of the parties' relationship"). Therefore, we disagree with the suggestion that a fact-finder must always decide whether a party's reliance on a misrepresentation was justified.

As to appellant's second argument, the evidence does not suggest anything other than an adversarial relationship between the parties at the time the alleged misrepresentation took place. When the Settlement Agreement was prepared, the parties were in the midst of negotiations to prevent the onset of litigation between them. Courts have repeatedly held a party may not justifiably rely on statements made by opposing counsel during settlement negotiations. *See Ortiz,* 203 S.W.3d at 422; *McMahan,* 108 S.W.3d at 497; *see also Garcia,* 876 S.W.2d at 849 ("We recognize

that settlement negotiations are adversarial and that reasonable negotiation often involves hard bargaining by both sides."). Here, the negotiation process involved an arms-length transaction in which both sides were represented and advised by their own counsel. *See Ortiz,* 203 S.W.3d at 422.

Admittedly, the parties later set aside their grievances, at least temporarily until the distribution of settlement proceeds prompted a renewal of hostilities. However, at the time the Settlement Agreement was drafted, the parties' relationship was adversarial. Therefore, appellant was not justified in relying on statements made by opposing counsel during that time period. Accordingly, we overrule appellant's second issue and affirm the summary judgment as to the Lawyers.

## IV.

### CONCLUSION

Appellees openly acknowledge the Settlement Agreement "inadvertently reverse[s]" the order in which attorney's fees and lawsuit expenses were to be deducted from the total recovery. Yet, that was the deal apparently struck by the parties and, on this record, Prime and Parker have not proven as a matter of law that they could freely disregard the agreed-upon formula in favor of another that Valls never saw and did not ratify. Accordingly, we must reverse summary judgment as to them and remand Valls's breach-of-contract claims for further proceedings.

However, even assuming the admitted mistake could be deemed professional negligence, as appellant alleges, Valls simply is not among those entitled to sue the Lawyers for negligence because he was not their client. *See Alpert,* 178 S.W.3d at 405. That rule is motivated by important public policy concerns:

> An attorney has a duty to zealously represent his clients within the bounds of

the law. . . . If an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest. Such a conflict hampers the resolution of disputes through the court system and the attainment of justice.

*Id.* (citing *Bradt v. West,* 892 S.W.2d 56, 71–72 (Tex.App.-Houston [1st Dist.] 1994, writ denied)); *see also Am. Centennial Ins. Co. v. Canal Ins. Co.,* 843 S.W.2d 480, 484 (Tex.1992) ("Texas courts have been understandably reluctant to permit a malpractice action by a nonclient because of the potential interference with the duties an attorney owes to the client.").

Accordingly, only a client may sue his lawyer for professional negligence. *See Alpert,* 178 S.W.3d at 405. For that reason, and because the record does not support a negligent-misrepresentation case against his opponents' counsel, we affirm the trial court's judgment as to appellant's tort claims against appellees Mike Johanson, Joe House, Mark Wham, Johanson & Fairless, L.L.P., and House & Wham, L.L.P.