**Reversed and Remanded and Majority and Dissenting Opinions filed April 25, 2013.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-10-01127-CV

---

### NEW DELIVERANCE CHURCH, INC., Appellant

### V.

### ADAM MILLER AND HOUSSIERE, DURANT & HOUSSIERE, LLP, Appellees

---

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2004-70043A**

---

## M A J O R I T Y   O P I N I O N

New Deliverance Church, Inc. ("the Church") appeals from a summary judgment in favor of Adam Miller and Houssiere, Durant & Houssiere, LLP ("Houssiere") (collectively, "appellees"). We reverse and remand.

# I. BACKGROUND

In 2004, an explosion occurred at a chemical plant owned by HRD Corporation d/b/a Marcus Oil & Chemical ("HRD"). Numerous litigants filed suit against HRD in cause number 2004-70043 ("the Original Suit"), including the Church and its pastor, Janice Caslin. As discussed in more detail below, the parties dispute whether appellees (who are an attorney and a law firm)[1] and the Church entered into an engagement agreement relative to this litigation.

At the time of the explosion, the Church had granted a deed of trust on its property to Church Mortgage and Loan Corporation ("CMLC") to secure a promissory note. CMLC intervened in the Original Suit, alleging the Church had assigned its interest in the litigation to CMLC.

On February 20, 2007, Caslin and HRD attended mediation. During the mediation, Caslin and HRD signed a handwritten "Rule 11 & Settlement Agreement" ("the Rule 11 Agreement") whereby Caslin ostensibly settled the Church's claims against HRD for $300,000.[2] Although CMLC was not a party to the Rule 11 Agreement, the agreement expresses that it is "[s]ubject to [CMLC's] approval" and "Plaintiff and [CMLC] shall execute full releases and dismiss all claims with prejudice on or before payment."

The Church filed a motion to vacate the Rule 11 Agreement, claiming its counsel (i.e., appellees) misrepresented the nature of the settlement and pressured Caslin to sign the agreement. Additionally, at some point, the Church alleged

---

[1] According to appellees, the Church initially signed a retention agreement with Miller, who then referred the Church to Houssiere. For simplicity, we will use the term "appellees," even when an act was performed by Miller or Houssiere individually, unless it is necessary to distinguish the parties.

[2] Additionally, Caslin and HRD signed a handwritten agreement whereby Caslin settled her individual claims against HRD.

HRD coerced and defrauded the Church into signing the Rule 11 Agreement. Appellees filed a motion to withdraw as counsel for the Church, which the trial court granted. Appellees intervened in the Original Suit, seeking attorney's fees from the Church. Since that time, the Church has been represented by several different attorneys and has also attempted to represent itself through various Church members.

HRD filed a traditional and no-evidence motion for summary judgment in which it challenged the Church's grounds for vacating the Rule 11 Agreement and argued the agreement should be enforced. On May 7, 2010, the trial court granted HRD's motion.

Shortly thereafter, appellees filed a traditional motion for summary judgment, arguing that, pursuant to their engagement agreement with the Church, the Church owed them a 40% contingency fee (as well as other costs and expenses) of the $300,000 settlement enforced by the trial court in its May 7 summary judgment. The Church filed a response to appellees' motion for summary judgment, a motion to strike appellees' plea in intervention, and an original answer to appellees' plea in intervention. Appellees filed a motion to strike all three of the Church's pleadings, contending the pleadings were filed by an attorney who does not represent the Church and the summary-judgment response was untimely.

On July 6, 2010, the trial court granted appellees' motion and struck the Church's pleadings. The trial court also granted appellees' motion for summary judgment, ordering the Church to pay appellees $139,540.80 in attorney's fees. Appellees filed a motion to sever claims between them and the Church from the Original Suit. On August 16, 2010, the trial court granted appellees' motion and transferred the claims to cause number 2004-70043A ("the Severed Suit"). HRD is

not a party to the Severed Suit. The severance effected a final judgment in the Severed Suit.

## II. SUMMARY JUDGMENT

In three issues, the Church challenges the summary judgments entered in favor of HRD and appellees.

### A. Standard of Review

We review a summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A party moving for traditional summary judgment must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant establishes a right to summary judgment, the burden shifts to the non-movant to present evidence raising a material fact issue. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

### B. Issues Pertaining to HRD

In its first and second issues, the Church contends the trial court erred by granting HRD's traditional and no-evidence motion for summary judgment, concluding the Rule 11 Agreement was valid and enforceable. However, as explained above, HRD is not a party to the Severed Suit. Furthermore, the summary judgment in favor of HRD remains an interlocutory order in the Original Suit. Accordingly, we may not consider the propriety of the trial court's summary judgment in favor of HRD. We overrule the Church's first and second issues.

4

## C. Issue Pertaining to Appellees

We begin by addressing the procedural issue of whether the Church was required to file a motion to strike appellees' intervention before the Church could challenge the merits of appellees' claim for contingency fees. As stated above, appellees joined the lawsuit by filing a plea in intervention. Under Texas Rule of Civil Procedure 60, "Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60. The rule authorizes a party with a justiciable interest in a pending suit to intervene in the suit as a matter of right. *In re Union Carbide Corp.*, 273 S.W.3d 152, 154–55 (Tex. 2008) (per curiam). The parties to the pending case may protect themselves from the intervention by filing a motion to strike. *Id.* at 155. If any party to the pending suit moves to strike the intervention, the intervenors have the burden to show a justiciable interest in the pending suit. *Id.*

The Church filed a motion to strike appellees' plea in intervention, but the trial court struck the Church's motion. Accordingly, the Church may not argue appellees improperly intervened because they lack a justiciable interest in the lawsuit. *Bryant v. United Shortline Inc. Assur. Servs., N.A.*, 972 S.W.2d 26, 31 (Tex. 1998). However, a party's failure to challenge the intervenor's justiciable interest in the suit does not mean the intervenor automatically prevails; the intervenor still bears the burden of proving its claims as any other party. *See, e.g.*, *Robnett v. Kirklin Law Firm*, 178 S.W.3d 45, 49 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("In moving for summary judgment under rule 166a(a) on its intervention claim, the firm had the burden to prove that it was entitled to judgment by establishing each element of its claim or defense as a matter of law."); *Inter-Cont'l Corp. v. Moody*, 411 S.W.2d 578, 589 (Tex. Civ. App.—Houston [1st Dist.] 1967, writ. ref'd n.r.e.) ("[When an] intervention should not be stricken[, ] . . .there

should be a hearing on the merits, under appropriate pleadings, which could, of course, encompass a decision of the intervenor's rights by way of a motion for summary judgment."). Thus, although the Church's motion to strike appellees' plea in intervention was itself stricken, appellees still have the burden to prove their claim, which they chose to do via a traditional motion for summary judgment.

In its third issue, the Church contends the trial court erred by granting summary judgment in favor of appellees on their claim against the Church for attorney's fees. In their motion for summary judgment, appellees argued the Church owed them, as a contingency fee, 40% of the settlement amount approved and enforced by the trial court when it granted HRD's motion for summary judgment.

Appellees' claim for contingent fees is based on a document entitled, "Power of Attorney and Engagement Agreement" ("the Engagement Agreement"), which appellees attached to their plea in intervention and motion for summary judgment. The Engagement Agreement contains the following pertinent contingent fees provision:

> 2.01 In consideration of the services rendered and to be rendered to the Client by the Attorneys, Client does hereby assign, grant and convey to the Attorneys the following present undivided interest in the Client's Claims for and as a reasonable contingent fee for the Attorneys' services, which fees shall be calculated upon the Total Net Recovery (as hereinafter defined) as follows:
>
> . . .
>
> 40% If settled at any time AFTER SUIT HAS BEEN FILED BUT PRIOR TO THE ENTRY OF A JUDGMENT BASED ON A JURY OR NON-JURY VERDICT.

The Church contends on appeal that the Engagement Agreement establishes Caslin signed the agreement solely as "Janice F. Caslin," which is "representative

6

of her individual capacity alone." According to the Church, "There is no reference to Janice Caslin executing the agreement in a representative capacity for or in behalf of New Deliverance Church nor is there any indication giving note to whether Janice Caslin was acting with actual or apparent authority." The form used for the Engagement Agreement has a signature block for the "CLIENT" with lines for "Signature," "Name Printed," "Client's Address," and "Client's Social Security No[.]"

Appellees respond that "[t]he contract entered into between Appellant and Appellees clearly and unambiguously identified the parties to the contract as including Appellant, New Deliverance Church." Appellees assert, "Signed by Janice Caslin, as the Pastor, President, CEO and Representative of New Deliverance Church, she had authority to bind New Deliverance Church to the contractual terms." According to appellees, the absence of a reference to "New Deliverance Church" in the signature block does not create an ambiguity "[g]iven the contract's clear identification of the parties to it as including New Deliverance Church."

The following statements appear on the front page of the Engagement Agreement:

> This Agreement . . . is made by and between *Janice Caslin / New Deliverance* (whether one or more) hereinafter defined and referred to as "Client" and [Miller.]
>
> . . .
>
> The Client hereby retains and employs the Attorneys to pursue and collect any and all claims [and damages] . . . sustained by the Client on or about *12-5*, 2004 related to *New Deliverance Church & Janice Caslin*. The Claims are against [HRD.] For the purposes of this Agreement, the term "Client" shall mean and include all persons or other entities for whom the individual signing this Agreement is acting for in the capacity of an agent (by power of attorney or

7

otherwise), executor, administrator, guardian of the person, guardian of the estate, conservator, or next friend of any minor or person who is NCM.

(italicized terms handwritten on the Engagement Agreement). Caslin wrote her initials "JC" at the bottom of each page of the Engagement Agreement except the final page. On the final page, Caslin signed "Janice F. Caslin" on the signature line for "CLIENT." Nothing is written on the lines for "Name Printed," "Client's Address," and "Client's Social Security No[.]" Nothing on the signature page or in any other provision of the Engagement Agreement indicates what Caslin's relationship was to the Church or that she signed on behalf of the Church in a representative capacity.

The summary-judgment record also includes a document entitled, "Arrangement for a Division of Fees Between Lawyers," which presumably memorialized Miller's referral of clients to Houssiere. This agreement does not mention the Church and was signed only by Caslin in what appears to be her individual capacity.

A court may determine as a matter of law whether an agency relationship exists by reviewing the agreement between the parties. *Wright Group Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 201 (Tex. App.—Dallas 2011, no pet.). When it is apparent from the entire agreement that an officer of a corporation signed the contract on behalf of the corporation, it is the corporation's contract. *See Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 628 (Tex. 2011) ("Anyone looking at the deed of trust, and noting that the grantor was 'Gary Ben Stephens, General Partner of Stephens Group, L.P., and Stephens Group II, L.P.,' would readily assume that Stephens likewise signed that same document in that same capacity, and that the omission of the partnership designation from the signature line was a harmless mistake."); *Pierce*, 343 S.W.3d at 201–02 (holding

signator signed contract as representative of entity because it was clear he had a connection to the entity and was signing on its behalf).

Additionally, we recognize this is not just any contract; it is a fee agreement between an attorney and a client. Particular considerations apply in this context. Lawyers must be clear in identifying the parties to the fee agreements they draft and present to clients. *See Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 450 (Tex. 2011). "Because a lawyer's fiduciary duty to a client covers contract negotiations between them, such contracts are closely scrutinized." *Id*. "Part of the lawyer's duty is to inform the client of all material facts." *Id.* "And so that this responsibility is not a mere and meaningless formality, the lawyer must be clear." *Id.* "Clarity in fee agreements is certainly important to clients." *Id*. "Only reasonable clarity is required, not perfection; not every dispute over the contract's meaning must be resolved against the lawyer." *Id*. at 451. "But the object is that the client be informed, and thus whether the lawyer has been reasonably clear must be determined from the client's perspective." *Id*.

It is not clear from the four corners of the Engagement Agreement whether Caslin signed on behalf of the Church or only on behalf of herself individually. No language indicating a representative capacity appears by Caslin's signature. *Cf. id.* at 452 (determining that, viewed from client's perspective, lawyer's signature on attorney-client fee agreement in a signature block which listed law firm's name above lawyer's signature reasonably indicated client was contracting with law firm rather than contracting with the lawyer individually). The Engagement Agreement references the "Client's Social Security No[.]"; this language suggests representation of an individual rather than the Church, which does not have a social security number. Viewed from the client's perspective, as required under

9

*Anglo-Dutch*, the fee agreement drafted by appellees is not clear as to whether Caslin signed in her individual capacity and thus does not conclusively establish appellees' claim for contingency fees.

In addition to arguing on appeal that the Engagement Agreement conclusively established their right to attorney's fees, appellees advance several reasons the Church is precluded from contending it was not a party to the Engagement Agreement. First, appellees argue the Church did not file a verified denial of Caslin's agency. Under Texas Rule of Civil Procedure 93(7), a defendant is required to file a verified denial if he denies "execution by himself or by his authority of any instrument in writing, upon which any pleading is founded, in whole or in part and charged to have been executed by him or by his authority." Tex. R. Civ. P. 93(7).

In their plea in intervention, appellees attach and incorporate the Engagement Agreement. As noted above, this attorney-client fee agreement does not clearly identify whether client Caslin signed in an individual capacity, in her capacity as a representative of the church, or in both capacities. In their plea in intervention, appellees allege they are entitled to 40% of the Church's settlement but do not specify their basis for this allegation. This basis could be based on the contention someone **executed** the Engagement Agreement on behalf of the Church **or** the contention the Church **ratified** the agreement; appellees argue both bases on appeal.

Additionally, we recognize some courts of appeals have held Rule 93(7) does not mandate a verified denial when the plaintiff does not allege that the defendant executed the subject contract. *See Barnwell v. Fox & Jacobs Constr. Co.*, 469 S.W.2d 199, 205 (Tex. Civ. App.—Dallas 1971, no writ) ("An examination of [plaintiff's] pleadings, however, reveals that nowhere therein is it

alleged that the invoice, or invoices, charged to be the contract between the parties, was executed by [defendant]. Since there were no allegations as provided for in [Rule 93(h), predecessor of Rule 93(7)] it necessarily follows that there was no necessity for verified denial."); *Woods v. P. B. S. Motor Co.*, 288 S.W.2d 557, 557 (Tex. Civ. App.—Texarkana 1956, no writ) ("Appellee did not specifically allege that the contracts sued upon were in writing or that they were executed by the appellant. Therefore, it was not necessary to deny the execution of the instruments under oath as required by Rule 93."); *see also Nelson v. Enriquez*, 373 S.W.2d 566, 568–69 (Tex. Civ. App.—Eastland 1963, no writ) ("After considering the allegations in appellee's petition and the contract attached thereto, we have concluded it was not necessary for appellants to deny under oath the matters set forth.").

Accordingly, under the specific circumstances of this dispute over an attorney-client agreement, we determine Rule 93(7) does not mandate a verified denial. We do not address other circumstances not presented by the facts of this case.

Appellees also argue the Church waived any contention with respect to the capacity in which Caslin signed because the Church did not plead ambiguity. We reject this contention because a determination regarding the identities of the parties to the Engagement Agreement is appropriate regardless of whether the Church pleaded ambiguity. *See Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 444–45 (Tex. 1993); *Watkins v. The Krist Law Firm, P.C.*, No. 14–02–00291–CV, 2003 WL 21786173, at *3–5 (Tex. App.—Houston [14th Dist.] Aug. 5, 2003, pet. dism'd) (mem. op.); *City of Bunker Hill Vill. v. Mem'l Vills. Water Auth.*, 809 S.W.2d 309, 310–11 (Tex. App.—Houston [14th Dist.] 1991, no writ).

11

Next, appellees contend the Church judicially admitted it retained appellees by stating in pleadings that it had terminated appellees. Appellees also note Caslin averred in an affidavit that appellees represented her and the Church in February 2007. Appellees did not mention these purported admissions in their motion for summary judgment. Furthermore, even if we consider these statements and construe them as judicial admissions, they are merely evidence that appellees represented the Church at some point but do not establish the Church was a party to the Engagement Agreement.

Appellees argue evidence in the record (but not attached to their motion for summary judgment nor referenced therein) proves the Church ratified the Engagement Agreement. However, because appellees did not raise ratification in their motion for summary judgment, we will not consider it on appeal. *See Wasserberg v. 84 Lumber Co., L.P.*, No. 14-10-00136-CV, 2011 WL 3447493, at *4 (Tex. App.—Houston [14th Dist.] Aug. 9. 2011, no pet.) (mem. op.).

Finally, appellees argue the trial court could have considered their motion for summary judgment unopposed because the trial court struck the Church's response to the motion. In support, appellees cite rule 3.3.2 of the Harris County District Courts RULES of the CIVIL TRIAL DIVISION: "Failure to file a response may be considered a representation of no opposition." However, a local rule may not conflict with the Texas Rules of Civil Procedure and cannot be used to decide the merits of a claim. *Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 629 n.5 (Tex. App.—Houston [14th Dist.] 2010, no pet.). We cannot apply rule 3.3.2 in such a fashion as to trump Texas Rule of Civil Procedure 166a(c), which obligates the traditional summary-judgment movant to prove his entitlement to summary judgment. *Id.*

Accordingly, the trial court erred by granting summary judgment because appellees failed to conclusively establish that they and the Church entered into the Engagement Agreement.[3]  We sustain the Church's third issue.

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.


                                        /s/     John Donovan
                                                Justice


Panel consists of Justices Boyce, McCally, and Donovan.     (McCally, J., dissenting).

---

[3] Because we conclude appellees did not conclusively establish Caslin signed the Engagement Agreement on behalf of the Church, we need not consider appellees' argument that Caslin had actual and apparent authority to sign the agreement as the Church's agent.