

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| LOYD STEPHENS and DENISE STEPHENS, | § | No. 08-13-00344-CV |
|  |  | Appeal from the |
| Appellants, | § |  |
|  |  | 96th Judicial District Court |
| v. | § |  |
|  |  | of Tarrant County, Texas |
| LNV CORPORATION, | § |  |
|  |  | (TC# 096-258699-12) |
| Appellee. | § |  |

## **O P I N I O N**

Appellants Loyd and Denise Stephens challenge a summary judgment rendered in favor of LNV Corporation (LNV), the purported assignee of a promissory note and deed of trust that Appellants granted to a predecessor-in-interest. LNV asserted generally that it was entitled to summary judgment against various claims for fraud, title, and abusive debt collection practices because Appellants defaulted on their mortgage obligations. However, LNV failed to attack all but one cause of action in its motion, and because LNV failed to prove Appellants defaulted as a matter of law by competent evidence, we reverse and remand all claims.[1]

## **BACKGROUND**
### *Factual History*

---

[1] We hear this case on transfer from the Second Court of Appeals in Fort Worth and apply that court's precedent where our precedent would otherwise be inconsistent. *See* TEX.R.APP.P. 41.3.

This case originally arose out of LNV's attempt to foreclose on a home occupied by Appellants located at 3923 Cross Bend Road in Arlington, Texas (the Property). The facts underlying this case and the chain of purported conveyances at issue here are convoluted. We lay them out here in chronological order.

On September 20, 2007, Appellants refinanced their mortgage and signed a home equity note and deed of trust (the Stephens' Deed of Trust) to Option One Mortgage Corporation (Option One) for $212,800. The summary judgment record shows that eight days later, on September 28, Option One purportedly executed an assignment of the Deed of Trust—identified as Tarrant County Clerk File No. D207347862—to Citigroup Global Markets Realty Corporation (Citigroup Global). The assignment was notarized by a notary in Orange County, California. The information on the execution sheet is handwritten, and the copy in the record contains a stamp from the Tarrant County District Clerk certifying it is a true and correct copy.

On January 25, 2008, Denise Stephens receives a letter from Option One advising her that it transferred its interest in her mortgage to Citi Residential Lending (Citi Residential). The relationship between Citi Residential and Citigroup Global is unclear from this record. Absent evidence to the contrary, we assume they are two separate entities.

On March 31, 2008, Citigroup Global entered into a bulk Master Mortgage Loan Sale Agreement with Loan Acquisition Corporation (Loan Acquisition Corp.). The parties agreed that on the date of closing, Loan Acquisition Corp. would obtain rights to all Citigroup Global mortgages listed in Schedule I, appended to the Master Agreement. The sale successfully closed on July 25, 2008, albeit with the mortgages in Schedule I ultimately being assigned to LNV Corporation instead.[2] Schedule I is redacted in this summary judgment record, save for one

---

[2] A second document in the record related to the sale makes clear that Loan Acquisition Corp. assigned the rights it obtained from the Master Agreement to LNV.

entry: a mortgage identified as AA Loan ID No. 91127, Seller ID No. 223355458, with a current balance of $211,991.30, Bid No. 84, to Entity LNV. In its appellate briefing, LNV asserts that this particular entry is the Stephens' Deed of Trust. However, that set of numbers appears nowhere else in this summary judgment record, and it is unclear whether this mortgage conveyed as part of a bulk transfer is actually the mortgage at issue in this case.

On September 11, 2008, Denise Stephens received notice from Citi Residential that it transferred its interest in her mortgage to Countrywide Home Loans, L.P. (Countrywide). Then, on July 14, 2009, she received a letter from Bank of America (BoA) that its subsidiary, BAC Home Loans Servicing, L.P. (BAC Home Loans), was transferring its interest in her mortgage to MGC Mortgage, Inc. She received another letter from MGC Mortgage, Inc., confirming that the company would begin servicing her loan on August 1, 2009. In her affidavit, Denise Stephens denied ever receiving notice that Countrywide had ever transferred its interest to BoA or BAC Home Loans.

On August 14, 2009, Denise Stephens received a statement from MGC Mortgage, Inc., showing a past due balance of $15,369, as well as charges for escrow payments, late fees, and other outstanding fees. The total past due balance on the statement is $19,011. In her affidavit, Denise Stephens denied being in arrears and denied receiving a statement from BoA or its subsidiary indicating she owed that money or that there were escrow payments being made.

According to Denise Stephens' notarized notice of default to MGC, on August 31, 2009, she sent a demand for an accounting to MGC, which MGC received on September 8, 2009. While Denise Stephens' default notice was in the mail, on September 2, she received a notice of default from MGC. For the first time in the record correspondence, LNV is identified as the Deed of Trust mortgagee, with MGC Mortgage, Inc., being its loan servicer. Pursuant to an

3

apparent service agreement with LNV, MGC Mortgage, Inc., sought to collect $18,721.85, the purported amount due after the Appellants allegedly defaulted on their obligations on April 1, 2009.

On October 1, 2009, Citigroup Global assigned the Stephens' Deed of Trust to LNV. On October 23, 2009, after allegedly never receiving a debt collector disclosure response from MGC, Denise Stephens sent MGC a notice of default letter and provided a ten-day opportunity to cure. MGC never responded. Instead, on November 9, 2009, LNV filed a Rule 736 foreclosure action in Tarrant County, which was ultimately dismissed. On January 26, 2011, LNV filed a second Rule 736 action, which lead to the counterclaims at the heart of this suit.

### *Procedural History*

During the foreclosure action that led to this current suit, LNV alleged that it was properly assigned a promissory note and deed of trust secured by the Property and that the Appellants refused to pay outstanding amounts owed on the mortgage. The Appellants filed an answer, maintaining that LNV was never properly assigned the deed of trust and denying that they were in arrears on mortgage payments. They also raised several counterclaims against LNV.

The trial court severed Appellants' counterclaims and docketed them as a separate lawsuit in Cause No. 096-258699-12. LNV then removed Cause No. 096-258699-12 to the United States District Court for the Northern District of Texas. While still in federal court, Appellants amended their complaint, ultimately asserting four causes of action: filing of fraudulent documents in the Tarrant County deed records, quiet title, damages under the Texas Debt Collection Act, and damages under the Texas Deceptive Trade Practices Act. Following the amendment, the district court signed an agreed order remanding this case back to state court.

4

Once back in state district court, LNV moved for summary judgment.

The trial court granted LNV summary judgment on all claims. This appeal ensued.

## DISCUSSION

Appellants raise four issues on appeal. Their primary argument is that the trial court lacked the authority to render a full summary judgment because LNV failed to challenge all causes of action in the live pleading. Appellants also complain that the trial court improperly admitted and considered certain LNV affidavits. Finally, Appellants assert that they raised genuine issues of material fact that should have precluded summary judgment on the sole quiet title claim LNV actually challenged in its motion.

### I.
### JUDICIAL NOTICE OF FEDERAL PLEADINGS

We pause briefly to address a threshold procedural issue. Both parties agree that while this case was in federal court, Appellants amended their complaint. The federal district court then executed a remand order returning the case to state court. Once in state court, LNV filed a motion for summary judgment. The trial court granted LNV's motion for summary judgment, and this appeal followed.

In disposing of this appeal, the Court has encountered a problem: the First Amended Complaint filed in federal court—i.e., the live pleading which LNV ostensibly attacked in its motion for summary judgment after remand—does not appear in the record before us. The docket index from the United States District Clerk indicates that the federal court submitted the remand order and a certified copy of its docket sheet, which references the First Amended Complaint, to the 96th Judicial District Court of Tarrant County. However, the Tarrant County District Clerk has confirmed that First Amended Pleading in question does not appear in the case file, and both parties concede that a physical copy of the live amended pleading from federal

5

court apparently never made it back into the state court record before summary judgment rendition. In a letter to the Court following our supplementation order to the Tarrant County District Clerk, counsel for Appellants stated that "[i]t became apparent at the hearing on the Motion for Summary Judgment that the papers filed in the U.S. District Court were not transmitted with the remand."

The ordinary procedure for supplementing the clerk's record where a document has been lost or destroyed is set out at TEX.R.APP.P. 34.5(e), which states:

> If a filing designated for inclusion in the clerk's record has been lost or destroyed, the parties may, by written stipulation, deliver a copy of that item to the trial court clerk for inclusion in the clerk's record or a supplement. If the parties cannot agree, the trial court must--on any party's motion or at the appellate court's request--determine what constitutes an accurate copy of the missing item and order it to be included in the clerk's record or a supplement.

However, Appellants have asked us to take judicial notice of the pleading and attached a purported, file-stamped copy of the First Amended Complaint filed in the United States District Court for the Northern District of Texas as an appendix to his brief. Under these circumstances, and in the interest of judicial expediency, we will do so.

Although ordinarily constrained to evaluating an appeal solely from the four corners of the record, "[a] court of appeals has the power to take judicial notice for the first time on appeal." *Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.*, 878 S.W.2d 598, 600 (Tex. 1994). The court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." TEX.R.EVID. 201(b)(2). Where litigants request the Court take judicial notice of federal pleadings and "provide us with copies of the pleadings, we are required to do so." *Surgitek, Inc. v. Adams*, 955 S.W.2d 884, 889 n.4 (Tex.App.--Corpus Christi 1997, pet. dism'd)(taking judicial notice on appeal of coordinate federal pleadings); *see also Freedom*

6

*Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012)(per curiam); *Hsin-Chi-Su v. Vantage Drilling Co.*, No. 14-14-00461-CV, 2015 WL 4249265, at *5 n.5 (Tex.App.--Houston [14th Dist.] July 14, 2015, pet. filed)(taking judicial notice of federal pleadings not contained in the clerk's record); TEX.R.EVID. 201(c)(2)("The court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information.").

We note that Appellants have presented a file-stamped copy of the federal pleading and the pleading appears on the docket index submitted to the Tarrant County District Clerk by the U.S. District Clerk on remand. Further, the existence of the pleading is readily verifiable as a public federal record, LNV has voiced no objection to the document in its brief, and because case law so requires, we take judicial notice of the First Amended Complaint and ground our summary judgment analysis in relation to that pleading.

## II.
### SUMMARY JUDGMENT
#### A.
### *Standard of Review*

LNV moved for summary judgment on the basis that it owned the note and deed of trust and could properly foreclose on the Property. We construe this as a defensive request for traditional summary judgment.

We review summary judgment grants *de novo*. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). "[Traditional] [s]ummary judgment is proper when the movant shows by uncontroverted or conclusive summary judgment evidence that no issue of material fact exists and that [it] is entitled to judgment as a matter of law." *Lawrence v. Lawrence*, 911 S.W.2d 443, 446 (Tex.App.--Texarkana 1995, writ denied). Where the non-movant raises an issue of material fact, summary judgment is precluded, and we must reverse and remand for further proceedings. *Id*.

**B.**
*Procedural Issues*
**1.**
**Scope of Summary Judgment: Full or Partial?**

In Issue One, Appellants maintain that the trial court erred by granting a full summary judgment when LNV's motion failed to address each one of its causes of action. As such, we are bound to remand. LNV counters that the trial court was empowered to grant full summary judgment because LNV attacked the main premise underlying all Appellants' causes of action and established that it was entitled to foreclose as a matter of law. We agree with Appellants that the trial court lacked the authority to grant summary judgment as to their real estate fraud, Texas Debt Collection Act, and Texas Deceptive Trade Practices Act claims because LNV's motion cannot fairly be construed as attacking those claims.

"In an appeal from a summary judgment, our scope of review is limited." *Gillebaard v. Bayview Acres Ass'n, Inc.*, 263 S.W.3d 342, 348 (Tex.App.--Houston [1st Dist.] 2007, pet. denied). "When a defendant moves for summary judgment, he must state specific grounds for relief." *Bever Props., L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 889 (Tex.App.--Dallas 2011, no pet.). The scope of the trial court's power to render summary judgment is set by the scope of the predicate motion for summary judgment and the grounds stated therein. *Gillebaard*, 263 S.W.3d at 348. "The term 'grounds' means the reasons that entitle the movant to summary judgment, in other words, 'why' the movant should be granted summary judgment." *Garza v. CTX Mortg. Co., L.L.C.*, 285 S.W.3d 919, 923 (Tex.App.--Dallas 2009, no pet.). "A motion for summary judgment must itself expressly present the grounds upon which it is made, and must stand or fall on these grounds alone." *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997). "Issues that were not expressly presented to the trial court by the written motion for summary judgment cannot be considered by an appellate

8

court as grounds for affirmance of a summary-judgment motion that was granted." *Gillebaard*, 263 S.W.3d at 348.

"To dispose of the plaintiff's case, the defendant's summary judgment motion must identify each of the plaintiff's claims and address the essential elements of those claims on which the defendant contends no genuine issue of material fact exists." *Bever Props., L.L.C.*, 355 S.W.3d at 889. "In determining whether the grounds are expressly presented, we look only to the motion itself; we do not rely on briefs or summary judgment evidence." *Id.* "Grounds are sufficiently specific if they give 'fair notice' to the nonmovant." *Id.* "Because the rule requires that the grounds must be expressly presented in the motion, we are not required to read between the lines to infer or glean from the pleadings or proof, any grounds for the summary judgment." [Internal quotation marks omitted]. *Davis v. First Indem. of Am. Ins. Co.*, 56 S.W.3d 106, 110 (Tex.App.--Amarillo 2001, no pet.). Where "the trial court grants more relief than the movants requested, we must reverse the summary judgment in part and remand to the trial court the claims not addressed in the summary judgment motions." *Bever Props., L.L.C.*, 355 S.W.3d at 886.

Appellants are correct that LNV's motion for summary judgment only ever explicitly attacked Appellants' cause of action for quiet title. LNV characterizes Appellants claims as follows: "The Stephens [sic] contend in their Original Petition that LNV Corporation cannot show ownership of the Note and that somehow the Note and the Deed of Trust are owned by different entities, and the Stephens [sic] seek a declaratory judgment and to quiet title and remove cloud on title." The remainder of the summary judgment motion repeatedly emphasizes that LNV was properly assigned the note and deed of trust, that Appellants are purportedly in arrears on payments, and that LNV is entitled to foreclose on the property. However, the

9

summary judgment motion never addresses Appellants' claims for fraudulent filing of a document in the deed records of Tarrant County (Cause of Action No. 1), damages under the Texas Debt Collection Act (Cause of Action No. 3), and damages under the Texas Deceptive Trade Practices Act (Cause of Action No. 4). As such, the question on appeal becomes whether the motion gave Appellants and the trial court "fair notice" that it was also attacking the remaining causes of action, and if so, on what grounds.

With respect to Cause of Action No. 1, we agree with LNV that the contention it properly owned the note and deed of trust could be fairly read as applying defensively to Appellants' claim for fraud against their real estate, since both quiet title and fraud on real estate relate to ownership issues. However, that logic only becomes clear on appellate review by virtue of LNV's brief filed in this Court. In determining the grounds presented in a motion for summary judgment, we look only to the text of the motion, not to the appellate briefs. *Bever Props., L.L.C.*, 355 S.W.3d at 889. Here, LNV framed its written motion arguments in relation to Appellants' claims for "declaratory judgment" and "to quiet title and remove cloud on title," possibly based on a mistaken assumption that the live pleading at bar was the Original Petition and not the First Amended Petition remanded from federal court. The body of the summary judgment motion never addresses or responds to Appellants' fraud allegations. As such, LNV's motion, when viewed standing as a separate document, cannot fairly be read as challenging Appellants' cause of action for fraud on real estate.

Likewise, the motion cannot be fairly construed as encompassing an attack on Causes of Action Nos. 3 and 4. Appellants' claims for violations of the Texas Debt Collection Act and the Texas Deceptive Trade Practices Act do not go to the issue of whether LNV may properly foreclose on the Property, but rather whether LNV engaged in certain prohibited conduct while

10

collecting on a purported debt. Simply put, LNV never addressed these claims either, choosing instead to focus its attention solely on the issue of title. From a procedural standpoint, the trial court erred in granting full summary judgment when LNV's motion can only be construed as challenging one out of four causes of action.

Issue One is sustained. We partially reverse summary judgment and remand Causes of Action Nos. 1, 3, and 4 to the trial court. Cause of Action No. 2 remains properly on review before this Court.

## 2.
### Evidentiary Objections

We next address Appellants' objections to the evidence the trial court considered in rendering summary judgment. In Issues Three and Four, Appellants contend that the trial court erred both in overruling their initial objections to the Affidavit of Bret Maloney, MGC's Senior Vice President of Default Management, and by allowing LNV to file a supplemental affidavit from Maloney without notice or prior leave less than twenty-one days before the summary judgment hearing. *See* TEX.R.CIV.P. 166a. We disagree on both counts.

We address the second objection first. Appellants are correct that the trial court cannot consider late-filed affidavits without first granting leave. *Id.* It is undisputed that LNV filed Bret Maloney's supplemental affidavit before obtaining leave of court. However, the day after LNV filed the supplemental affidavit, it also filed a motion for leave, which the trial court took under advisement and later granted. We review the trial court's decision to grant or deny leave to file late evidence for abuse of discretion. *See Campbell v. Auto. Ins. Co. of Hartford Connecticut*, No. 07-06-0158-CV, 2007 WL 1390625, at *3 (Tex.App.--Amarillo May 9, 2007, no pet.)(mem. op.). We find that the trial court did not abuse its discretion by granting leave and considering the late-filed affidavit as part of the summary judgment record. Maloney's affidavit rebutted a

contention Denise Stephens made in her affidavit about MGC conceding that her account was up-to-date in a letter she received. Maloney's affidavit states that the letter was sent in error. Further, even though LNV filed Maloney's supplemental affidavit on July 18, 2013, and the parties were slated for a summary judgment hearing on July 19, 2013, both parties filed written arguments regarding the propriety of leave at the hearing, and the judge granted the leave while also providing the Appellants with the opportunity to supplement their summary judgment response in light of the new evidence. The Appellants suffered no undue prejudice from the trial court's decision.

We next address Appellants' two evidentiary objections to certain passages of Bret Maloney's original affidavit. We review evidentiary rulings in summary judgment proceedings for abuse of discretion. *See Paciwest, Inc. v. Warner Alan Props.*, *LLC*, 266 S.W.3d 559, 567 (Tex.App.--Fort Worth 2008, pet. denied).

First, Appellants objected to Paragraph 4, stating that Exhibit 1 is a true and correct copy of the note Appellants executed with Option One Mortgage Corporation.[3] However, in their motion for summary judgment, Appellants concede the note is accurate, stating: "Plaintiffs agree that this is a true and correct copy of the original note." They object only on the grounds that "[t]he note reflects that Option One Mortgage Corporation is the payee. The note is unendorsed. So, based upon the face of the note Option One is the holder and owner of same." That is not an evidentiary objection, but a legal assertion. Given Appellants' concession that the document is valid and authentic, the trial court did not err in overruling Appellants' objection to that paragraph of the Maloney Affidavit.

---

[3] The paragraph in question reads as follows:

> 4. Attached hereto as Exhibit '1' is a true and correct copy of a Texas Home Equity Note dated September 20, 2007. Attached as Exhibit '2' is the Deed of Trust securing payment of the Note from the Stephens to Option One Mortgage Corporation in the amount of $212,800.00.

12

Second, Appellants objected to Paragraphs 8 and 9, which vouched for the authenticity of Exhibits 6 and 7, two allonges[4] attached to the original promissory note. Specifically, Appellants argued in their response that (1) the allonges are not sworn or certified copies of the original, (2) Maloney did not testify he was in possession of the originals, (3) he did not testify he had seen or examine the originals, and (4) he did not lay a foundation showing they are true and correct copies.[5]

"[A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX.R.CIV.P. 166a(f). Maloney's statements that he has personal knowledge gained from his position with LNV and his review of business records is sufficient to meet the knowledge requirement here. *See Scott v. U.S. Bank, Nat'l Ass'n*, No. 02-12-00230-CV, 2014 WL 3535724, at *3 (Tex.App.--Fort Worth July 17, 2014, no pet.)(mem. op.). The trial court did not err in overruling Appellants' objections.

Issues Three and Four are overruled.

## C.
### *Merits of Summary Judgment: Quiet Title*

Finally, we address the merits of summary judgment in light of the evidence properly before the trial court. In Issue Two, Appellants maintain that the trial court erred by granting summary judgment on their quiet title claim in favor of LNV for three reasons.

### 1.

---

[4] An allonge is a sheet of paper attached to a negotiable instrument that is used to add further indorsements once there is no more space for indorsements on the original instrument. *See Sw. Resolution Corp. v. Watson*, 964 S.W.2d 262, 263 (Tex. 1997)(per curiam); *Allonge*, BLACK'S LAW DICTIONARY (7th ed 1999).

[5] For the first time on appeal, Appellants raise the argument that the trial court should have stricken the allonges because Maloney never testified that they were "affixed" to the original note. *See Sw. Resolution Corp.*, 964 S.W.2d at 263 (stapling allonge to instrument is enough to "affix" it and render the allonge operative). This objection was never made to the trial court. As such, it is waived on appeal. *Gomez v. Allstate Tex. Lloyds Ins. Co.*, 241 S.W.3d 196, 202 (Tex.App.--Fort Worth 2007, no pet.).

13

**Chain of Title Issues**

First, Appellants assert that there are fact questions related to the deed of trust assignments. Specifically, Appellants contend that the first assignment between Option One and Citigroup Global "is fraudulent because it was executed in blank, and the contents filled in long after it was executed; and further, that the contents were filled in by a company that did not exist at the time the assignment was executed." In support of their contention that the First Assignment was essentially a "blank check" filled in by hand after the fact, the Appellants point to an annotation at the upper left hand corner of the assignment which states "WHEN RECORDED MAIL TO: MGC Mortgage Inc, Document Control, Allison Martin, 7195 Dallas Parkway, Plano, Texas 75024." They also note that while the First Assignment was purportedly executed in 2007, Secretary of State records show MGC was not incorporated in the State of Texas until 2008. Appellants further rely on an affidavit and e-mail exchange from Tarrant County District Clerk manager Gayla Neal in which she states that a ten- to fifteen-day backlog during 2007 would have conclusively prevented the Original Deed of Trust from being recorded and assigned a file number before Citigroup Global could attempt to record their assignment of that same Deed of Trust eight days later.

Neither argument is availing here. While there appear to be some anomalies in the documents, the assignment between Option One and Citigroup Global is facially valid. Moreover, the fact that the Tarrant County District Clerk certified that it would have been impossible to finish recording the original Deed of Trust before Option One assigned it to Citigroup Global is legally inconsequential here. Recording is not strictly necessary to effectuate an assignment of real property. *See Lichtenstein v. F&M Nat'l Bank of Kaufman*, 372 S.W.2d 716, 718 (Tex.Civ.App.--Dallas 1963, no writ). Rather, recording is a way for a property

14

assignee to put the general public on notice of its property interest and ensure that a subsequent entity cannot usurp that interest by offering the original assignor valuable consideration for it and then claiming good-faith ignorance of the previous assignment. *See* 64 TEX.JUR.3d *Records and Recording Laws* § 102 (2013); *see also* TEX.PROP.CODE ANN. § 13.001 (West 2014).

The summary judgment evidence shows that Appellants signed a mortgage agreement with Option One. Option One then assigned the deed of trust to Citigroup Global Markets Realty Corporation on September 28, 2007. Although LNV maintains that Citigroup Global then sold the Stephens Deed of Trust to it as part of a bulk transaction on March 31, 2008, we cannot verify that from the documents presented. However, the record does show that Citigroup Global assigned the Stephens Deed of Trust to LNV on October 1, 2009. Thus, as of that date, LNV assumed all rights and responsibilities as holder of that deed of trust. Appellants cannot defeat summary judgment on defective transfer grounds.

## 2.
### Indorsement Issues

Second, Appellants argue that there are fact questions related to the validity of the allonges to the promissory note, either because they are not valid on their face or because there is no evidence they were properly physically "affixed" to the note. More specifically, Appellants maintain that because the purported allonges appear in the record separately from the promissory note, LNV cannot establish as a matter of law that it is a holder in due course of the note. As such, it is not entitled to foreclose on the Property.

While this physical attachment issue presents a novel opportunity to address the continued viability of commercial paper rules in the electronic age,[6] the allonge question is

---

[6] Historically, under Texas commercial law, allonges had to be "firmly affixed" to the negotiable instrument in order to be effective as a supplement. Evidence that an allonge was not affixed securely enough to prevent easy detachment from the instrument defeated the allonge's operability as a supplement to the note. However, the

unnecessary to the resolution of this appeal. The fact that LNV may not be a holder in due course of the promissory note would not preclude it from establishing a claim to the Property under the deed of trust. *See Bierwirth v. BAC Home Loans Serv'g, L.P.*, No. 03-12-00583-CV, 2014 WL 712520, at *3 (Tex.App.--Austin Feb. 20, 2014, no pet.)(mem. op.). "[T]he note and the deed-of-trust lien afford distinct remedies on separate obligations-the note against the borrower and the lien against the real property-thus, a lien creditor may pursue foreclosure of a lien against real property under the deed of trust independent of any personal action against the borrower for collection on the note." *Id.* Because LNV moved for summary judgment on the Appellants' quiet title claim, only the deed of trust is relevant to our analysis. The summary judgment could not be reversed on the basis that LNV was not a holder in due course of the note. Further discussion of this issue would be advisory, and we express no opinion as to the promissory note.

### 3.
### Fact Issues on Default

Finally, Appellants aver that there were questions of fact related to default on the note. We agree that on this record, LNV failed to conclusively establish as a matter of law that Appellants defaulted.

Ultimately, the issue of default in this case boils down to a swearing match between Bret Maloney and Denise Stephens. Stephens asserts she and her husband did not default; Maloney maintains they did. LNV bears the burden of proving default, and by extension superior title. On this record, LNV cannot establish default.

---

Legislature amended the Texas Business and Commerce Code in 1995 and removed the word "firmly" from the affixation requirement. *See Sw. Resolution Corp.*, 964 S.W.2d at 263.

We note the peculiar challenge of the appellate courts today in determining whether an allonge is "affixed" to the note in the age of electronic filings and docket transfer orders. As of January 1, 2014, attorneys are required to electronically file documents in every civil case on appeal in this state, and the courts of appeals now almost exclusively review records electronically.

LNV devotes only a single paragraph to the issue of default in its motion for summary judgment, asserting that the Appellants defaulted on their mortgage obligations in April 2009. As proof, LNV cites Bret Maloney's affidavit. However, Bret Maloney's affidavit never states that the Appellants defaulted on their mortgage in April 2009. Instead, Maloney stated: "11. The Stephens [sic] failed to comply with the terms of the Note by failing to make monthly principal and interest installments in the amounts of $1,863.10 as required under the terms of the Note due and payable as of *July [] 2009* and each subsequent payment thereafter." [Emphasis added]. Maloney's affidavit cannot support the specific allegation made in the motion.

More to the point, even if we overlook the date discrepancies between the motion and the affidavit, Maloney's sworn contention in Paragraph 11 that the Appellants were in arrears as of July 2009 is conclusory. Given that, on this record, LNV can only definitively establish it held the Deed of Trust as of October 1, 2009, Maloney, as an LNV officer, cannot claim personal knowledge as to whether the Appellants defaulted on their June mortgage obligations because at that point, Citigroup Global—LNV's immediate predecessor-in-interest—still held the Deed of Trust. Maloney offers no explanation for how he knows the Appellants defaulted in June 2009, nor does he offer documents or an accounting that would substantiate this statement, apart from an assertion in Paragraph 10 that LNV sent Appellants a notice of default on November 5, 2009. Maloney attached a copy of the notice as Exhibit 8. Even then, a careful review of Exhibit 8 reveals that the Notice of Default in Dishonor was actually sent *by Denise Stephens to LNV* after the company refused to provide her with a debt collector disclosure statement.

In short, Bret Maloney's conclusory statement that the Appellants defaulted, without more, is incompetent summary judgment evidence. Thus, even if we failed to consider the Appellants' contravening evidence, which shows LNV's predecessors-in-interest affirmatively

17

misdirected the Appellants as to whom they should make mortgage payments, LNV provided no competent evidence showing the Appellants defaulted. Summary judgment in favor of LNV on the quiet title claim was improper.

Issue Two is sustained.

## CONCLUSION

Having sustained Issues One and Two, we reverse the trial court's summary judgment in its entirety and remand for further proceedings.

December 2, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.