

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| BORDER DEMOLITION & ENVIRONMENTAL, INC., | § | No. 08-16-00094-CV |
| Appellant, | § | Appeal from the |
| v. | § | 171st District Court |
| ERNESTO PINEDA, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2014DCV1097) |

# **O P I N I O N**

This is an appeal from a judgment granting a hybrid motion for summary judgment. Appellant Border Demolition & Environmental, Inc. ("Border Demolition"), filed tort and contract claims against Appellee Ernesto Pineda, a licensed Texas attorney, based on alleged duties flowing from a continuing relationship and implied agreement of representation. We affirm in part, and reverse and remand in part.

## I. BACKGROUND

*A.  Factual Background*

Border Demolition, an environmental and demolition contractor, is a Texas corporation

wholly owned by its principals, Raul and Bonnie Solis, who are husband and wife.[1]  Raul Solis

serves as president and Bonnie Solis serves as vice-president, secretary, and treasurer.  Ernesto

Pineda is a self-employed attorney who provided legal services to the Solises over the course of

nearly ten years beginning in 2003.

In March 2007, Border Demolition hired Luis Reza, a construction worker recommended

by Pineda who had recently been laid off from his prior job.  Months later, in November 2007,

Border Demolition terminated Reza's employment when a Solis family member reported she had

seen Reza speeding and driving erratically in a company-owned truck.  As she caught up to

confront the driver, Reza rudely responded with an obscene hand gesture.  Raul Solis informed

Pineda of Reza's termination in December 2007 during a phone conversation in which they were

also discussing other unrelated business issues.

After Reza's termination, Border Demolition received notice that Reza had filed a workers'

compensation claim alleging he had been injured on the job and that he was seeking workers'

compensation benefits.[2]    On May 5, 2008, Bonnie Solis sent an email addressed to Pineda's

paralegal containing the subject line "Luis Reza," which stated:

> Sandra,
>
> Will you please show this to [M]r. [P]ineda. I don't want to give anyone
> information on Mr. Reza. If I receive a subpoena, then I will.  Ask Mr. Pineda if he
> agree[s] .. [I] know he's more than familiar with the situation with [M]r. Reza. Thx.
>
> Bonnie Solis
> Vice President
> Border Demolition and Environmental, Inc.

---

[1] We take the facts from the evidence the parties presented in support of their summary judgment pleadings, identifying disputes in the evidence where they exist, and recognizing that the facts have not yet been adjudicated.

[2] The record does not contain a copy of Reza's workers' compensation claim.  Moreover, there is no indication of when the claim was filed, if at all, when the Solises became aware of it, or how it was resolved.

2

[Address Omitted]

Pineda claimed that he did not see Bonnie Solis's email at the time it was sent, and that he only became aware of Reza's workers' compensation claim sometime the next year.

On April 16, 2009, Reza served Border Demolition with a wrongful discharge lawsuit he had filed alleging he was fired based on workers' compensation retaliation (the "Reza lawsuit"). That same day, Bonnie Solis sent an email to Pineda with the subject line "luis reza," stating:

> Mr. Pineda,
>
> Remember that supervisor you recommended to us, Luis Reza? We just got served a lawsuit by him. I realize that the workers comp will step in, but attached is the lawsuit for your review.
>
> Bonnie Solis
> Vice President
> Border Demolition and Environmental Inc.
> [Address Omitted]

Pineda acknowledged both receiving and reading Bonnie Solis's email and the Reza lawsuit attached. He also acknowledged that he did not reply, nor take any other steps relevant to the suit on behalf of Border Demolition. In an affidavit, he explained he thought Bonnie Solis was going to turn over the suit to her workers' compensation insurance carrier as she had written. At his deposition, he added he had waited for Bonnie Solis to contact him or call, "to see if there was going to be any follow up." Although he continued meeting with both Solises on other matters, he claimed he never had any conversations with either of them about the Reza suit. Bonnie Solis acknowledged that she did not have any additional conversations with Pineda after she emailed the Reza lawsuit. She admitted that she did not personally retain Pineda to represent Border Demolition, did not enter a fee agreement with him, or receive any bills from him on the Reza matter. She asserted, however, that Pineda spoke mostly with her husband about Reza. She

3

explained that she had partially overheard one side of a phone conversation but could not remember the exact verbiage of their call.

Raul Solis stated that within a few days after his wife sent her email, he spoke with Pineda by phone and, based on this conversation, he believed that Pineda had agreed to represent Border Demolition. Raul Solis testified that during this call, Pineda explained he had spoken to Reza and asked him, "Why are you suing these people? These are good people."[3] Raul Solis reported he then asked Pineda, "What are we going to do next?" Pineda responded with two comments: "I don't know if he'll drop it," and, "We'll have to keep an eye on it." From this conversation, Raul Solis understood that Pineda had agreed to assist with the Reza matter and would receive his "normal" hourly rate, even though Pineda had never represented Border Demolition in a litigation matter.

Because Border Demolition never answered the Reza lawsuit, Reza obtained a default judgment on July 15, 2009, awarding damages to him in the amount of three hundred forty-five thousand one hundred thirty-four dollars. The district clerk's office mailed a notice of default judgment to Border Demolition the next day. Bonnie Solis testified that she did not recall receiving the notice, and further acknowledged that Border Demolition took no action to either timely move for a new trial or appeal the judgment.[4] Four years later, in September 2013, Bonnie Solis contacted Pineda informing him that she just learned that a default judgment had been entered in Reza's favor and that Reza had begun collection efforts.

---

[3] Raul Solis also stated that it was during this conversation with Pineda that he learned Reza had been a tenant of Pineda at the time Pineda recommended Reza's employment. Pineda, however, claimed that he disclosed his landlord-tenant relationship to the Solises shortly after they hired Reza in 2007.

[4] Shortly thereafter, in August of 2009, Pineda evicted Reza from his home for non-payment of rent, and obtained a judgment against Reza for approximately $4,200. According to Pineda, however, he never collected on that judgment.

*B. Procedural Background*

On April 4, 2014, Border Demolition filed suit against Pineda alleging claims of negligence, breach of fiduciary duty, and, in the alternative, a claim of breach of contract. In the negligence and breach of fiduciary duty claims, Border Demolition listed the following omissions against Pineda connected to his handling of the Reza suit: his failure to defend Border Demolition, his failure to file an answer on its behalf, his failure to transmit the petition and citation to its insurance agent or carrier, his failure to arrange for a lawyer to defend it, his failure to inform Border Demolition personnel that he would not defend it, and his failure to advise Raul and Bonnie Solis that they should engage another lawyer to defend their business. As for the alternative claim, Border Demolition asserted it had established a course of dealing with Pineda that permitted it to informally enter agreements with him. Consequently, when Border Demolition transmitted the Reza petition to him and Pineda promised to "talk to" Reza, a contract had been formed to defend the Reza lawsuit. As to all three causes of action, Border Demolition asserted that Pineda's conduct proximately caused resulting damages, which included a one hundred fifty-thousand-dollar payment made by Border Demolition after reaching a compromise and settlement with Reza of the final judgment he had earlier obtained by default.

After adequate discovery, Pineda filed a motion for summary judgment with a single, general reference to the Texas Rules of Civil Procedure indicating that he filed his motion "pursuant to TRCP 166a[.]" Pineda argued three grounds to support judgment in his favor in the following order: (a) he asserted that Border Demolition impermissibly fractured a legal malpractice claim into multiple causes of action; (b) he asserted he owed no duties of care to Border Demolition with regard to the Reza lawsuit as neither he nor Border Demolition manifested an intention to create an explicit or implied attorney-client relationship on that matter; and (c) he

5

asserted that Border Demolition had no expert testifying that Pineda had committed legal malpractice.

In support of his motion, Pineda attached his own affidavit averring, among other things, that he was never retained to represent Border Demolition in the Reza lawsuit, that Border Demolition never expressly asked him to represent it, and that neither of the Solises requested he file an answer to the suit or to take any action on behalf of Border Demolition in its defense. Pineda also attached emails showing his past course of conduct in which he quoted fees and requested retainers when he and Bonnie Solis previously discussed individual or transactional work. Lastly, he also supported his motion with documentation from other cases over the same period in which Border Demolition hired other lawyers to litigate on its behalf. Pineda's motion analyzed the summary judgment evidence he attached arguing first, that the evidence conclusively negated an attorney-client relationship and, second, that Border Demolition failed to provide expert testimony necessary to its malpractice claim.

Border Demolition responded to Pineda's motion providing argument and supportive evidence. It argued that the evidence raised a question of fact concerning an implied agreement on the Reza matter. In support of its argument, Border Demolition attached an expert witness affidavit from Ruben Robles of El Paso, an attorney licensed to practice law in Texas since 1983 and board-certified in personal injury trial law. In his affidavit, Robles asserted Pineda had established a long-term pre-existing attorney-client relationship that did not require express formalities on the Reza matter. Robles opined that Pineda breached duties of care and protection owed to Border Demolition based on an implied contract of representation. He averred that Pineda had a duty to inform Bonnie Solis of her "legal rights and duties" with respect to the Reza suit. He also averred that Pineda should have informed her of the deadline for filing an answer and the

6

consequences that could follow in failing to do so. Robles described that when an attorney is "presented with a legal problem from a client . . . with whom he has a continuing relationship, that attorney must act to protect his client's interest." Moreover, he claimed that by doing "absolutely nothing" in response to Bonnie Solis's email, Pineda fell "well short of the standard of care," adding that it was "almost unimaginable that an attorney, when presented with this scenario, would take absolutely no action."

The trial court granted Pineda's motion without specifying the basis for its decision, and Border Demolition filed this appeal.

## II. ISSUES ON APPEAL

In four issues, Border Demolition contends that the trial court erred in granting summary judgment in favor of Pineda. Issue One is framed as a *Malooly* issue[5] and it asserts generally that the summary judgment evidence raised genuine issues of material fact. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) (general issue sufficient to allow argument as to all possible grounds upon which summary judgment should have been denied). When a trial court's order does not specify grounds, an appellant may raise a point of error as to all possible grounds as long as the appellant supports its general issue with argument and authorities. *Rangel v. Progressive County Mut. Ins. Co.*, 333 S.W.3d 265, 269–70 (Tex.App.--El Paso 2010, pet. denied) (citing *Pena v. State Farm Lloyds,* 980 S.W.2d 949, 959 (Tex.App.--Corpus Christi 1998, no pet.); *see also McCoy v. Rogers,* 240 S.W.3d 267, 272 (Tex.App.--Houston [1st Dist.] 2007, pet. denied) ("The challenging party must also, however, present those arguments and supporting authority in

---

[5] This general issue is sometimes referred to as a *Malooly* issue as it broadly asserts that the trial court erred by granting summary judgment and within that broad issue provides argument negating all possible grounds upon which summary judgment could have been granted. *Ramirez v. First Liberty Ins. Corp.,* 458 S.W.3d 568, 571-72 (Tex.App.--El Paso 2014, no pet.) (citing *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970)).

order to merit reversal."). In addition to a broad *Malooly* issue, Appellant asserted three other more specific issues, numbered two through four, which provide grounds and argument. We focus our analysis on the three specific issues presented as each one includes substantive briefing challenging the trial court's entry of summary judgment. Based on our disposition of Issues Two through Four, we find it is not necessary to address Issue One, the *Malooly* issue. *See* TEX.R.APP.P. 47.1.

## A. Standard of Review

On appeal, both no-evidence and traditional motions for summary judgment are reviewed *de novo*. *See Valence Operating Company v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). A no-evidence motion for summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard of review as we would for a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Under this standard, we review the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006). When a nonmovant presents more than a scintilla of probative evidence that raises a genuine issue of material fact, a no-evidence summary judgment is improper. *Smith v. O'Donnell,* 288 S.W.3d 417, 424 (Tex. 2009). Evidence that fails to constitute more than a mere scintilla is, in legal effect, no evidence at all. *Lozano v. Lozano*, 52 S.W.3d 141, 145 (Tex. 2001).

Under a traditional motion, the moving party bears the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). Once the movant establishes its right to

8

summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact, thereby precluding summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Id*.

When, as here, the trial court's order does not specify any grounds upon which it relied for its ruling, we must affirm the judgment if any of the theories asserted in the motion are meritorious. *Sotelo v. Stewart,* 281 S.W.3d 76, 80–81 (Tex.App.--El Paso 2008, pet. denied). "[A]ll theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court." *Davis v. First Indem. of Am. Ins. Co.,* 56 S.W.3d 106, 109 (Tex.App.--Amarillo 2001, no pet.) (citing *Casso v. Brand,* 776 S.W.2d 551, 553 (Tex. 1989)). A summary judgment cannot be affirmed on a ground that was not expressly presented to the trial court in the motion for summary judgment. *See Stephens v. LNV Corp*., 488 S.W.3d 366, 373–74 (Tex.App.--El Paso 2015, no pet.); *Hall v. Harris County Water Control and Improvement Dist. No. 50,* 683 S.W.2d 863, 867 (Tex.App.--Houston [14th Dist.] 1984, no writ.).

## B. Issue Two: Legal Malpractice (Duty)

In Issue Two, Border Demolition contends that the evidence raised a genuine issue of material fact as to two distinct duties of care Pineda owed based on the existence of an attorney client relationship. First, Border Demolition asserts the evidence raised a fact issue as to whether Pineda expressly agreed to defend Border Demolition in the Reza suit. Second, Border Demolition asserts that even if Pineda did not agree to represent it, he owed a duty to timely advise that he would not do so based on the existence of a continuing relationship.

9

The first question in a legal malpractice claim is whether there exists an attorney-client relationship as an attorney only owes a duty to his or her clients. *Sotelo*, 281 S.W.3d at 80 (citing *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 792 (Tex. 1999)). While an attorney-client relationship is usually created through an express contract, "[t]he relationship can be implied from the parties' conduct indicating the intent to enter into such a relationship." *See id.*; *see also Saulsberry v. Ross*, 485 S.W.3d 35, 42 (Tex.App.--Houston [14th Dist.] 2015, pet. denied) (attorney's reliance on absence of written contract was misplaced as attorney-client relationship may be implied by the parties' objective words and actions). "[A]n attorney-client relationship may arise by implication if the lawyer knows a person reasonably expects him to provide legal services but does nothing to correct that misapprehension." *Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 634 (Tex.App.--Houston [14th Dist.] 2010, no pet.).

When determining whether the parties formed an implied attorney-client relationship, the focus is on "whether there is a meeting of the minds … based on objective standards of what the parties did and said and not on their alleged subjective states of mind." *State v. Martinez*, 116 S.W.3d 385, 392 (Tex.App.--El Paso 2003, no pet.) (citing *Terrell v. State,* 891 S.W.2d 307, 313 (Tex.App.--El Paso 1994, writ ref'd)). Evidence that a client harbored a mistaken, subjective belief of a formed relationship is insufficient, standing alone, to establish that the attorney had a duty to represent the client: there "must be some manifestation that both parties intended to create" the relationship. *Valls,* 314 S.W.3d at 634; *see also Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 254 (Tex.App.--Houston [14th Dist.] 2003, pet. denied). "A question of fact exists when the evidence does not conclusively establish the existence of an attorney-client relationship." *See Martinez,* 116 S.W.3d at 392 (citing *Tanox*, 105 S.W.3d at 254).

When an attorney-client relationship exists, the attorney "is held to the standard of care

which would be exercised by a reasonably prudent attorney." *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989); *see also Cunningham v. Hughes & Luce, L.L.P.,* 312 S.W.3d 62, 67 (Tex.App.--El Paso 2010, no pet.). An attorney may violate this duty by, for example, "delaying or failing to handle matters when entrusted to do so, or in failing to use ordinary care in litigation." *Gen. Motors Acceptance Corp./Crenshaw, Dupree & Milam, L.L.P. v. Crenshaw, Dupree & Milam, L.L.P./Gen. Motors Acceptance Corp.,* 986 S.W.2d 632, 636 (Tex.App.--El Paso 1998, pet. denied); *see also Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.,* 284 S.W.3d 416, 426 (Tex.App.--Austin 2009, no pet.) (lawyer may commit legal malpractice by "delaying or failing to handle a matter entrusted to the lawyer's care, or by not using a lawyer's ordinary care in preparing, managing, and prosecuting a case").

Attorney duties are not, however, limited to representing a client in a lawsuit and under certain circumstances, an attorney also has a duty to inform a client, or even a putative client, that he or she will not be representing it in litigation, and to instruct the putative client to take alternative action to protect its interests. *Burnap v. Linnartz,* 914 S.W.2d 142, 148 (Tex.App.--San Antonio 1995, writ denied) (citing *Kotzur v. Kelly,* 791 S.W.2d 254, 258 (Tex.App.--Corpus Christi 1990, no writ) and *Parker v. Carnahan,* 772 S.W.2d 151, 157 (Tex.App.--Texarkana 1989, writ denied)). Generally, duties owed by an attorney only arise in cases in which the evidence supports a finding that an attorney knew or should have known that his or her conduct would have led a reasonable person to believe the attorney was providing representation in a matter. *Parker,* 772 S.W.2d at 157; *Burnap,* 914 S.W.2d at 149. If the record contains evidence of circumstances that could have led a person to believe that an attorney had agreed to undertake representation, a fact question is raised on the issue, and summary judgment is inappropriate. *See Parker*, 772 S.W.2d at 157 (fact issue on whether attorneys were negligent in failing to advise plaintiff that they were not

11

representing her interests where plaintiff's husband was represented by attorneys in criminal tax evasion case based on jointly-filed tax returns, plaintiff met and discussed her case with attorneys, and attorneys advised her to sign late-filed tax returns). However, if the record does not contain evidence from which a jury could conclude that an attorney had reason to know that the plaintiff was relying on him to provide legal services, the court may determine, as a matter of law, that the attorney owed no duty to protect, and the court may grant summary judgment in the attorney's favor. *See Dillard v. Broyles*, 633 S.W.2d 636, 643 (Tex.App.--Corpus Christi 1982, writ ref'd n.r.e.) (where no evidence of communications between the parties with respect to a particular legal matter, the attorney owed the plaintiffs no duty to inform the plaintiffs that he was not representing them since attorney had no reason to know of plaintiffs' assumption that attorney was representing them); *Valls,* 314 S.W.3d at 636 (summary judgment in attorney's favor appropriate where evidence clearly established that the defendant counsel represented the opposing party during settlement negotiations and the plaintiff was represented by his own attorneys in negotiations). With these principles in mind, we turn to Border Demolition's legal malpractice claim against Pineda

Here, Pineda describes himself as a transactional attorney, not a litigator. He does not dispute that he had a pre-existing, long-term attorney-client relationship assisting Border Demolition with a variety of business issues. He asserts his work with the Solises, however, centered on transactional advice for their ongoing businesses, for investments they considered, and for preparation of their last wills. Before engaging in work for the couple individually, or for one of their business interests, Pineda described he would typically quote an estimate and charge an hourly rate for his services with a retainer requested. On appeal, Pineda argues that he conclusively established he did not agree to represent Border Demolition in the Reza lawsuit, nor was he paid

12

any fees. Moreover, he asserts evidence of his past pattern of conduct showed he entered express agreements whenever he was previously retained for their legal work. Thus, he asserts that the absence of an express agreement on the Reza suit conclusively established no attorney client relationship existed thereby precluding a finding that he owed any duty of care or protection. In these circumstances, however, we do not agree.

The absence of an express agreement is not conclusive. An attorney-client relationship may also be established through an implied agreement based on words and conduct of the parties. *See Sotelo,* 281 S.W.3d at 80–81; *Saulsberry,* 485 S.W.3d at 42. Moreover, courts recognize that "an attorney-client relationship can be implied from the attorney's gratuitous rendition of professional services." *Sotelo*, 281 S.W.3d at 81. The failure to pay a fee is but one factor among many a jury may consider in determining whether an implied agreement exists. *See Vinson & Elkins v. Moran,* 946 S.W.2d 381, 404 n.15 (Tex.App.--Houston [14th Dist.] 1997, writ dismissed by agreement) (recognizing that the payment of a fee is a factor a jury could consider in determining whether an attorney-client relationship existed between the law firm and its putative clients); *see also Valls*, 314 S.W.3d at 633–34 (considering the lack of paid legal fees as a factor when finding no evidence of an attorney-client relationship); *Hill v. Bartlette*, 181 S.W.3d 541, 547–48 (Tex.App.--Texarkana 2005, no pet.) (considering the lack of payment schedule as a factor when finding no evidence of an attorney-client relationship).

Here, there is no dispute that Bonnie Solis sent Pineda a copy of the Reza lawsuit on the same day as service asking him to review it, and Pineda acknowledged that he did. Pineda argues, however, that Bonnie Solis's email with the Reza suit attached misled him since she stated therein that the workers' compensation carrier would "step in" to handle the Reza lawsuit. He further asserts he had no reason to believe that Border Demolition relied on him to represent it in the

13

lawsuit. Pointedly, he claims he never assured Raul or Bonnie Solis that he would help "keep an eye on" the suit or that he would provide representation of any kind. In direct conflict with this evidence, however, Raul Solis testified that Pineda told him words to the effect that, "We'll have to keep an eye on it." Given this conflict, we hold that Border Demolition established the existence of a genuine issue of material fact on whether Pineda knew or should have known that Border Demolition relied on him for representation or advice on the Reza matter.

Courts faced with similar factual scenarios have concluded that when an attorney's actions—particularly one with a pre-existing attorney-client relationship—suggest he is assisting with a legal matter, or the attorney makes promises that he will assist in the future, this evidence is sufficient to raise a question of fact regarding an implied agreement. *See, e.g*., *Saulsberry,* 485 S.W.3d at 44 (finding sufficient evidence that attorney-client relationship existed on post-judgment action where attorney had represented plaintiff in the same lawsuit prior to judgment, had spoken to opposing counsel on plaintiff's behalf regarding post-judgment issues, and had provided advice to the plaintiff on post-judgment issues); *Perez v. Kirk & Carrigan,* 822 S.W.2d 261, 265 (Tex.App.--Corpus Christi 1991, writ denied) (where attorneys allegedly stated to plaintiff that they were his lawyers and that they "were going to help him" was sufficient to raise a fact issue on whether an implied attorney-client relationship existed).

In *Rice v. Forestier*, a case pre-dating electronic mail but nonetheless persuasive, a client retained an attorney to represent him and his wife in two personal legal matters in addition to a bankruptcy proceeding involving the family-owned business. *Rice v. Forestier,* 415 S.W.2d 711, 713 (Tex.Civ.App.--San Antonio 1967, writ ref'd n.r.e.). During representation in these matters, a third-party filed an unrelated lawsuit against the client and he or his wife delivered the suit and citations to the attorney's law office—either to the attorney or his secretary—and the attorney

14

received and reviewed the citations. *Id*. at 713. Like the case at hand, the attorney thereafter failed to inform his client that he would not be representing him in the new suit and did not take any action in the matter. A default judgment was subsequently entered against the client as no answer was filed in response to the suit. *Id*. While the evidence did not demonstrate that the client expressly requested representation in the new suit, the court concluded that a jury properly found that the attorney owed a "duty to inform" the client that he did not intend to file an answer to the lawsuit. *Id*. The court found it significant that the parties had an ongoing attorney-client relationship in which the attorney was contemporaneously handling other matters for the client, thereby justifying the client's delivery of the citations to the attorney's office. *Id.* The court concluded that the attorney was free to decide to reject the representation, but that under the circumstances presented, he had a duty to inform the client of that decision so that he could timely secure other counsel to represent him. *Id.*

Here, after Pineda received a request to review a lawsuit from a client with whom he has had a long-term relationship, Pineda failed to make clear his intention not to provide advice or services on a time-sensitive matter.[6] Pineda admitted that he never sent a reply, nor did he communicate by another means. Border Demolition's expert witness further opined that Pineda had an obligation to respond to Bonnie Solis's email and advise, at a minimum, that he was rejecting an implied request for representation and it should seek other legal counsel.

---

[6] Pineda also cites *Burnap v. Linnartz*, 914 S.W.2d 142, 148 (Tex.App.--San Antonio 1995, writ denied) for the proposition that "[a]bsent fraud or collusion, an attorney owes a duty only to those parties in privity of contract with the attorney." Pineda argues that he was not in privity of contract with Border Demolition, and that because Border Demolition did not plead any "fraud or deception or collusion by Pineda," he "owed no duties to Border Demolition in connection with the Reza lawsuit." In making this argument, however, Pineda overlooks the court's discussion in *Burnap* that an attorney-client relationship can be "implied in some cases from the conduct of the parties," which would, in effect, establish the requisite privity of contract between the parties giving rise to the attorney's duty. *Id.* at 148. As Border Demolition alleges the existence of an implied attorney-client relationship, it was not necessary for Border Demolition to plead any allegations of fraud, deception, or collusion in order to establish that Pineda owed it a duty.

15

On review, we find that Border Demolition presented sufficient evidence from which a jury could reasonably conclude that Pineda knew or should have known that Border Demolition was relying on him for representation. *See Rice*, 415 S.W.2d at 713; *see also Perez,* 822 S.W.2d at 265. Pineda admitted that he saw Bonnie Solis's email and reviewed the Reza lawsuit as she requested. Viewing the evidence in the light most favorable to Border Demolition, as we must, the evidence further shows that Pineda told Raul Solis he would keep an eye on the Reza suit, or convince Reza to drop it. While a jury may decide not to believe this testimony, we are not free to do so on review. *See generally Fielding,* 289 S.W.3d at 848. Accordingly, we sustain Border Demolition's second issue.

### C. Issue Three: Legal Malpractice: No Expert Testimony

In Issue Three, Border Demolition asserts that Pineda was not entitled to summary judgment based on a lack of expert testimony as no such evidence was necessary under the circumstances. Alternatively, if expert testimony is deemed necessary, then Border Demolition asserts the affidavit of attorney Ruben Robles is sufficient to preclude judgment in Pineda's favor.

Legal malpractice is a negligence cause of action based on an attorney-client relationship. *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 783 (Tex. 2006); *Sotelo,* 281 S.W.3d at 80. To prove a malpractice claim, the client must establish that: (1) the lawyer owed a duty of care to the client; (2) the lawyer breached that duty; and (3) the lawyer's breach proximately caused damage to the client. *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017). In Texas, lawyers are held to the standard of care that would be exercised by a reasonably prudent attorney. *Cosgrove*, 774 S.W.2d at 664; *see also Cunningham,* 312 S.W.3d at 67. "[E]xpert testimony of an attorney is necessary to establish this standard of skill and care ordinarily exercised by an attorney." *Hall v. Rutherford*, 911 S.W.2d 422, 424 (Tex.App.--San Antonio 1995, writ

16

denied). "[S]uit-within-a-suit causation requires proof that the client would have won the underlying trial absent his lawyer's negligence[.]" *Zanetti*, 518 S.W.3d at 404. Additionally, "when the client alleges that his lawyer's negligence caused him to lose his case, we require proof that 'but for the attorney's breach of duty, [the malpractice plaintiff] would have prevailed on the underlying cause of action and would have been entitled to judgment.'" *Id*. (quoting *Stanfield v. Neubaum*, 494 S.W.3d 90, 96 n.3 (Tex. 2016)).

Discussing the elements of a legal malpractice claim, the Texas Supreme Court recently restated that "[b]reach and causation are entirely distinct such that 'an abundance of evidence as to one cannot substitute for a deficiency of evidence as to the other.'" *Rogers,* 518 S.W.3d at 406 (citing *Alexander v. Turtur & Assoc.'s, Inc.,* 146 S.W.3d 113, 119 (Tex. 2004)). With regard to causation, "[w]hen a legal-malpractice case arises from prior litigation, the plaintiff must prove that the client would have obtained a more favorable result in the underlying litigation had the attorney conformed to the proper standard of care." *Zanetti*, 518 S.W.3d at 401. This is typically referred to as the "case-within-a-case" or "suit-within-a-suit" requirement, and is the "accepted and traditional means of resolving the issues involved in the underlying proceeding in a legal malpractice action." *Id*. This case-within-a-case methodology applies when the injury claimed depends on the merits of an underlying action. *Id*. Indeed, this Court previously noted that expert testimony is ordinarily required to provide a causal link between the attorney's actions and the plaintiff's damages in cases in which a jury would have no way of determining the merits of an underlying lawsuit. *Saldana-Fountain*, 450 S.W.3d at 918.

In seeking summary judgment, Pineda contends he challenged the expert evidence in support of two elements of the legal malpractice claim: standard of care and causation. In contrast, Border Demolition contends Pineda challenged the standard of care element only, and its expert

17

affidavit sufficiently raised a genuine issue of material fact on that element of the claim. Partly agreeing, Pineda does not challenge the adequacy of Robles' affidavit in addressing the standard of care element, but rather, he asserts that Border Demolition did not bring forth any evidence on the element of causation. Without expert testimony on causation, Pineda asserts that summary judgment is appropriate. Being the center of the controversy, we turn first to examine the extent to which the no-evidence motion challenged elements of the legal malpractice claim.

A no-evidence motion for summary judgment must state the elements as to which the movant contends there is no evidence. TEX.R.CIV.P. 166a(i); *Timpte Industries, Inc. v. Gish,* 286 S.W.3d 306, 310 (Tex. 2009); *Wade Oil & Gas, Inc. v. Telesis Operating Company, Inc.*, 417 S.W.3d 531, 540 (Tex.App.--El Paso 2013, no pet.). A motion brought pursuant to Rule 166a(i) is essentially a motion for a pretrial directed verdict that challenges the nonmoving party to present evidence raising a genuine issue of material fact supporting each element contested. TEX.R.CIV.P. 166a(i); *Gish*, 286 S.W.3d at 310. The Supreme Court has explained that Rule 166a(i) does not permit conclusory or general no-evidence challenges. *Gish,* 286 S.W.3d at 310. This requirement serves the purposes of providing adequate information to the opposing party by which it may oppose the motion and defining the issues to be considered for summary judgment. *Id.* at 311 (quoting *Westchester Fire Ins. Co v. Alvarez,* 576 S.W.2d 771, 772 (Tex. 1978)). Once such a motion is filed, the burden shifts to the nonmoving party to present more than a scintilla of evidence raising an issue of material fact as to the elements specified in the motion. *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006); *see also Stierwalt v. FFE Transp. Services, Inc.,* 499 S.W.3d 181, 194 (Tex.App.--El Paso 2016, no pet.). If the nonmovant fails to meet its burden of establishing a genuine issue of material fact on each challenged element of its claims, the trial court must grant summary judgment. TEX.R.CIV.P. 166a(i); *Ford Motor Co. v. Ridgway,* 135

18

S.W.3d 598, 600 (Tex. 2004).

Here, rather than listing elements being challenged, Pineda's motion presents nine lines in one paragraph titled "No Expert." The first two lines are general statements regarding the legal malpractice claim. The first line states, "Border Demolition has no expert testifying that Ernesto Pineda committed legal malpractice." Then, the second line describes that expert testimony is generally needed to support a legal malpractice claim with citation to two cases provided, *Alexander v. Turtur & Assoc., Inc.*, 146 S.W.3d 113 (Tex. 2004) and *Hall v. Rutherford*, 911 S.W.2d 422 (Tex.App.--San Antonio 1995, writ denied).

Several lines next address the standard of care element only. For example, the fourth line makes a reference to a pattern jury charge holding an attorney liable for "failing to do that which an attorney of ordinary prudence could have done under the same or similar circumstances or doing that which an attorney of ordinary prudence could not have done under the same or similar circumstances." *Tex.Pat.Jury Charges*, Malpractice §60.1, as modified by *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989). The last line argues, "[u]ndoubtedly, Plaintiff cannot find an attorney willing to testify that a reasonably prudent attorney under these circumstances would have known he had been retained to file an answer in the Reza lawsuit." Responding to allegations asserted in Border Demolition's petition, line five asserts "[t]here is no expert testimony that the recipient of an email merely notifying an attorney of a lawsuit and that workers' compensation insurance will handle it would cause an ordinary prudent attorney to take some action." This sentence is followed by three similar lines of argument as follows:

> And, certainly not a transactional/estate planning attorney who had never been hired by that company to handle its litigation. Undoubtedly, Plaintiff cannot find an attorney willing to testify that a reasonably prudent attorney under these circumstances would have known he had been retained to file an answer in the Reza lawsuit. Both Solises admit Mr. Pineda was not asked to file an answer.

19

In the last remaining line, the third sentence states, "[t]he standard of care and the consequences of a failure to meet the standard are typically beyond the ken of the average juror." In his oral argument to this Court, Pineda asserted that this line of his motion challenged the causation element. His brief, however, expressed his causation argument more expansively stating, "Border Demolition presented no expert evidence that it would have prevailed or had a better outcome in the Reza lawsuit had Mr. Pineda either represented it or informed it he would not represent the company."

Although Rule 166a(i) does not prescribe "a particular form, style or outline[,]" *Welch v. Coca-Cola*, 36 S.W.3d 532, 536 (Tex.App.--Tyler 2000, pet. withdrawn), the Texas Supreme Court instructs that "[t]he motion must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." *Gish,* 286 S.W.3d at 310. The specificity requirement may be analogized to fair notice pleading requirements. *Gish*, 286 S.W.3d at 311 (citing TEX.R.CIV.P. 45 (b) and 47(a)). Specificity serves a dual function in providing "the opposing party with adequate information for opposing the motion, and to define the issues for the purpose of summary judgment." *Id*.

Having reviewed Pineda's motion, we hold that it expressly challenges standard of care by giving Border Demolition adequate information but falls short of challenging the causation element of the malpractice claim. TEX.R.CIV.P. 166a(i); *Cmty. Initiatives, Inc. v. Chase Bank of Texas*, 153 S.W.3d 270, 280 (Tex.App.--El Paso 2004, no pet.) ("nothing in rule 166a(i) or its comment forbids a defendant from challenging every element of the plaintiff's claims, as long as each element is distinctly and explicitly challenged"). The one line relied on merely provides an

20

indirect and general reference, at best, in mentioning that "consequences are beyond the ken of the average juror." Clearly, causation is not listed as an element nor is it expressly described with an assertion that expert testimony is needed to address the merits of the case-within-a-case requirement of the legal malpractice claim. *Saldana-Fountain*, 450 S.W.3d at 918.

In reaching our conclusion, we recognize that Pineda's motion cited two cases, *Alexander v. Turtur & Assoc., Inc*., 146 S.W.3d 113 (Tex. 2004) and *Hall v. Rutherford*, 911 S.W.2d 422 (Tex.App.--San Antonio 1995, writ denied), and these cases discussed the need for expert evidence to establish causation and standard of care respectively. First, *Hall* provides that expert testimony of an attorney is necessary to establish the standard of skill and care ordinarily exercised by an attorney. *Hall*, 911 S.W.2d at 424. Then, in *Alexander*, the Supreme Court determines that a jury was not competent to determine whether a client would have prevailed in an underlying trial but for its attorney's alleged negligence in preparing and trying a case. *Alexander*, 146 S.W.3d at 115. A no-evidence movant, however, cannot rely on sources outside of the motion itself to meet the specificity requirement. "A motion for summary judgment must itself expressly present the grounds upon which it is made, and must stand or fall on these grounds alone." *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997). "In determining whether the grounds are expressly presented, we look only to the motion itself; we do not rely on briefs or summary judgment evidence." *Bever Props, L.L.C. v. Jerry Huffman Custom Builder, L.L.C*., 355 S.W.3d 878, 889 (Tex.App.--Dallas 2011, no pet.). It is well settled that a summary judgment cannot be affirmed on a ground that was not expressly presented to the trial court in the motion for summary judgment. *See Stephens v. LNV Corp*., 488 S.W.3d 366, 373–74 (Tex.App.--El Paso 2015, no pet.); *Hall v. Harris County Water Control and Improvement Dist. No. 50,* 683 S.W.2d 863, 867 (Tex.App.--Houston [14th Dist.] 1984, no writ.). Accordingly, we hold that Pineda's motion does

21

not sufficiently raise a no evidence issue on the element of causation.

We conclude that Pineda's no-evidence motion did not conform to the specificity requirement of Rule 166a(i) to give fair notice to Border Demolition to address the causation element of the legal malpractice claim. *See In re Mohawk Rubber Co.*, 982 S.W.2d 494, 497 (Tex.App.--Texarkana 1998, no pet.) (defendant's motion alleged plaintiffs had no evidence of "causation"). We therefore conclude that Pineda's no-evidence motion for summary judgment did not challenge the causation element of the legal malpractice claim. Accordingly, we sustain Border Demolition's third issue.

### D. Issue Four: Impermissible Fracturing

In Issue Four, Border Demolition asserts Pineda was not entitled to summary judgment based on his assertion that it impermissibly fractured the legal malpractice claim into two other causes of action for breach of fiduciary duty and breach of contract.

"A plaintiff is not limited to suing an attorney only for professional negligence" when other claims are applicable. *Saldana-Fountain*, 450 S.W.3d at 918 (citing *Deutsch v. Hoover, Bax & Slovacek, L.L.P.,* 97 S.W.3d 179, 189 (Tex.App.--Houston [14th Dist.] 2002, no pet.)). If a plaintiff's complaint is more appropriately classified as another claim, such as "fraud, DTPA, breach of fiduciary duty, or breach of contract, then the client can assert a claim other than negligence." *Deutsch,* 97 S.W.3d at 189. When a client truly has only one claim for relief sounding in legal malpractice, however, he is prohibited from dividing or fracturing that claim into other related claims. *Saldana-Fountain,* 450 S.W.3d at 918 (citing *Deutsch,* 97 S.W.3d at 189).

In determining whether a plaintiff has only a claim for legal malpractice or whether he may truly assert other independent claims for relief, we look to the "substance of the claim and not its title[.]" *Saldana-Fountain*, 450 S.W.3d at 918. When a plaintiff's factual allegations center on

22

the attorney's failure to exercise that "degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess," then the plaintiff may only pursue a legal malpractice claim against the attorney, and the trial court may properly grant summary judgment on any other claims the plaintiff may bring based on those same allegations, regardless of the labels the plaintiff may place on those claims. *Id.*; *see also Deutsch,* 97 S.W.3d at 189 ("If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim"); *Sledge v. Alsup*, 759 S.W.2d 1, 2 (Tex.App.--El Paso 1988, no writ) (noting that regardless of how a plaintiff characterizes his claim, the undertaking to exercise ordinary skill and knowledge constitutes a claim for legal malpractice). Given that Pineda asserts impermissible fracturing of two claims, we will separate our analysis and begin with consideration of the breach of fiduciary duty claim.

Texas courts have long recognized that fiduciary duties are owed by an attorney to a client due to the special nature of the attorney client relationship. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002). As explained in *Johnson*, attorneys occupy positions of confidence towards their client and are obligated to act with "integrity and fidelity." *Id.* The relationship "contemplates fair dealing and good faith, rather than legal obligation, as the basis of the transaction." *Id.* A claim that an attorney breached a fiduciary duty owed to a client focuses on whether the attorney obtained an improper benefit from representing the client. *See Kemp v. Jensen*, 329 S.W.3d 866, 871–72 (Tex.App.--Eastland 2010, pet. denied) (citing *Gibson v. Ellis,* 126 S.W.3d 324, 330 (Tex.App.--Dallas 2004, no pet.)). For example, an attorney may breach a fiduciary duty when the attorney benefits improperly from the attorney-client relationship by "subordinating his client's interest to his own, retaining the client's funds, engaging in self-dealing,

23

improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve these ends." *Id*. (citing *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex.App.--Houston [14th Dist.] 2001, pet. denied)). In the absence of any such allegations to support a claim for breach of fiduciary duty, a trial court may properly grant summary judgment against the challenged claim. *Saldana-Fountain,* 450 S.W.3d at 918-19.

In its petition, Border Demolition asserted that Pineda owed it a fiduciary duty as a matter of law and such duty required Pineda to disclose that he had not answered and would not defend the Reza lawsuit. On appeal, Border Demolition similarly argues that Pineda breached a fiduciary duty by failing to disclose that he did not take any action to represent Border Demolition in Reza's lawsuit. Border Demolition relies on *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988), for the proposition that an attorney owes his client a duty to fully and fairly disclose all facts and important information. We agree, of course, that part of a lawyer's duty in representing his client is to inform the client of all material facts in a case. *See Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 450 (Tex. 2011).

Importantly, Texas courts consistently hold that an attorney's failure to make such a disclosure is considered a breach of the lawyer's professional duties. Standing alone, however, such allegations do not support an independent claim for breach of fiduciary duty. *See, e.g., Kemp,* 329 S.W.3d at 871–72 (allegation that attorney failed to disclose that he sued the wrong entity improperly fractures former client's professional negligence claim); *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex.App.--Fort Worth 2002, pet. denied) (claim that lawyer misled clients into believing their case was ready for trial stated claim for legal malpractice, not breach of fiduciary duty); *Aiken v. Hancock*, 115 S.W.3d 26, 29 (Tex.App.--San Antonio 2003, pet. denied) (plaintiff's allegation that attorney failed to disclose that he had not fully prepared his

24

case for trial constituted a "standard" legal malpractice case, where plaintiff made no additional allegations of self-dealing, deception, or express misrepresentations that would have supported a separate cause of action for breach of fiduciary duty); *Goffney*, 56 S.W.3d at 193-94 (reversing judgment in favor of plaintiff on claim for breach of fiduciary duty, where plaintiff alleged that an attorney misled him into believing he had properly prepared his case for trial, where plaintiff failed to allege any claims of self-dealing or deception).

Here, Border Demolition failed to allege in its petition that Pineda engaged in any self-dealing or that Pineda improperly benefitted from his actions or inactions regarding the Reza lawsuit. Instead, Border Demolition made virtually identical factual allegations in support of both its legal malpractice claim and its claim for breach of fiduciary duty. Both claims allege that Pineda failed to timely answer the Reza lawsuit and otherwise defend and protect Border Demolition's interests. Although these allegations support a claim for legal malpractice, they do not additionally support a distinct claim for breach of fiduciary duty. Thus, we find that bringing these allegations as separate claims constitutes impermissible fracturing. *See generally Klein v. Reynolds, Cunningham, Peterson & Cordell,* 923 S.W.2d 45, 49 (Tex.App.--Houston [1st Dist.] 1995, no writ), *as clarified on denial of reh'g* (Nov. 30, 1995*) (where plaintiff laid out an identical list of alleged acts and omissions in his claims for legal malpractice and breach of fiduciary duty, the trial court properly dismissed all but his claim for legal malpractice).

In conclusion, when a corporate plaintiff alleges only that an attorney failed to take certain actions to protect its interests in a case, or otherwise failed to provide proper representation—but makes no allegation that the attorney engaged in any self-dealing or that the attorney received an improper benefit from his or her actions—the action sounds solely in professional negligence, rather than in breach of fiduciary duty. *See Saldana-Fountain,* 450 S.W.3d at 919. In the absence

25

of any such allegations to support a claim for breach of fiduciary duty, a trial court may properly grant summary judgment on that claim. *Id.* at 918-19; *Aiken,* 115 S.W.3d at 29; *Greathouse v. McConnell,* 982 S.W.2d 165, 172 (Tex.App.--Houston [1st Dist.] 1998, pet. denied). Because Border Demolition's claim for breach of fiduciary duty centers solely on Pineda's failure to adequately perform his legal duties, his failure to disclose that he did not perform those duties sounds solely in professional negligence, and the trial court did not err in granting Pineda's motion for summary judgment on the breach of fiduciary duty claim.

As for the breach of contract cause of action, Border Demolition argues the evidence supports a finding that Border Demolition entered an implied agreement with Pineda to provide representation in the Reza lawsuit, and that Pineda breached this implied agreement by failing to answer the lawsuit. Border Demolition contends that there is a "difference between failing to do what one has agreed to do, and failing to meet the standard of care required of a reasonably prudent attorney."

As recognized by the Texas Supreme Court, a claim that an attorney failed to provide legal services as agreed upon by the parties is a claim for negligence sounding in tort law. *Willis*, 760 S.W.2d at 644; *see also Goffney*, 56 S.W.3d at 190 (attorney's failure to render agreed upon services in a contract provide for a legal malpractice claim since it is a failure to properly exercise the "degree of care, skill, and diligence as lawyers of ordinary skill and knowledge commonly possess and exercise"). As such, when a plaintiff's breach of contract claim is based solely on restated allegations that an attorney failed to provide adequate (or any) legal services as agreed upon by the parties, the trial court may properly grant summary judgment on that claim based on

improper fracturing.[7] *See, e.g., Judwin Properties, Inc. v. Griggs and Harrison,* 911 S.W.2d 498, 506 (Tex.App.--Houston [1st. Dist.] 1995, no writ) (summary judgment proper against plaintiff's counterclaim of breach of contract for attorney's alleged failure to provide adequate legal services since the contract claim is merely a restatement of the legal malpractice claim); *Klein,* 923 S.W.2d at 49.

Here, similar to the breach of fiduciary duty claim, Border Demolition's factual allegations regarding its breach of contract claim centers solely on Pineda's failure to represent Border Demolition in the Reza lawsuit, a failure of adequate representation in the Reza lawsuit, or both. Those allegations support a claim for legal malpractice only and Border Demolition may not recast its malpractice claim into a separate claim for breach of contract. Because we conclude that Border Demolition's claim sounds solely in professional negligence, the trial court did not err by granting Pineda's motion for summary judgment on the breach of fiduciary duty claim or the breach of contract claim. Thus, we overrule Border Demolition's fourth issue.

### III. CONCLUSION

We affirm that portion of the trial court's order granting summary judgment as to Border Demolition's claims for breach of fiduciary duty and breach of contract. We reverse the trial court's order granting summary judgment on Border Demolition's claim for legal malpractice, and remand the matter for further proceedings in accordance with our opinion.


GINA M. PALAFOX, Justice

November 8, 2017

---

[7] We note that courts have found an independent cause of action based on breach of contract against an attorney for "excessive legal fees." *See, e.g.*, *Deutsch,* 97 S.W.3d at 199 (noting that a client's only contract claim against a law firm was centered on a billing dispute with the firm); *see also Jampole v. Matthews,* 857 S.W.2d 57, 61 (Tex.App.-- Houston [1st Dist.] 1993, writ denied) (distinguishing a client's breach of contract claim relating to excessive fees). In the present case, however, Border Demolition makes no claim that it had any fee dispute with Pineda.

27

Before Rodriguez, J., Palafox, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge), sitting by assignment