

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| RODDY HARRISON, AS TRUSTEE OF THE HARRISON TRUST, | § | No. 08-15-00318-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 143rd District Court |
| | § | |
| ROSETTA RESOURCES OPERATING, LP, | | of Reeves County, Texas |
| | § | |
| | | (TC#13-10-20507-CVR) |
| Appellee. | § | |

## O P I N I O N

Roddy Harrison appeals the trial court's grant of summary judgment on all claims in his action for breach of contract, trespass, negligence, gross negligence, and violation of the accommodation doctrine. In two issues, Harrison claims: (1) the trial court erred in granting Rosetta's motions for traditional and no-evidence summary judgment because there was sufficient evidence supporting each element and there were genuine issues of material fact; and (2) the trial court similarly erred in granting summary judgment against his accommodation doctrine claims because some evidence support each element of his claim and there were genuine issues of material fact. We affirm.

## BACKGROUND

This case involves a water-use dispute between an oil and gas lessee and the surface owner.

Harrison is trustee of the Harrison Trust, which owns the surface of a 320-acre tract of land in Reeves County, Texas. Like many parcels of land in oil and gas cases, the surface estate has been severed from the mineral estate, the minerals in this case being owned by the State of Texas. When Harrison purchased the land it had a few dilapidated structures and a functioning irrigation well put in place by a prior owner but was otherwise undeveloped and had no existing agricultural or ranching use.

In October 2009, Harrison executed an oil and gas lease on behalf of the State[1] with Eagle Oil & Gas Co. The lease provided Eagle with the right to prospect and drill for oil and gas and the rights incident thereto. Regarding water use, the lease stated as follows:

> 21. USE OF WATER. Lessee shall have the right to use water produced on said land necessary for operations under this lease except water from wells or tanks of the owner of the soil; provided, however, Lessee shall not use potable water or water suitable for livestock or irrigation purposes for waterflood operations without the prior consent of the owner of the soil.

Eagle began its drilling operations, but before completing its first well assigned the lease to Comstock Oil & Gas, L.P., subject to an agreement to indemnify Eagle against claims arising from its operations to that point. Within a few months, Harrison and several other plaintiffs sued Eagle for negligence in destroying Harrison's irrigation ditch and damage resulting from road construction, among other claims. Comstock defended Eagle in the lawsuit and settled a few months later. According to the settlement agreement, Comstock would make repairs to a water well on Harrison's land and purchase 120,000 barrels of water from the trust at a rate of fifty cents

---

[1] Section 52.182 of the Texas Natural Resources Code authorizes the surface owner of certain lands to execute mineral leases on behalf of the State and to retain a portion of the lease proceeds as compensation for acting as agent for the State and for interference with the surface caused by mineral extraction. TEX.NAT.RES.CODE ANN. § 52.171-182 (West 2011).

per barrel.[2]   A plastic-lined "frac pit" was also built on the property to store water produced from the well, although the pit was not a requirement of the settlement agreement.   Comstock complied with the agreement and purchased the required amounts of water from Harrison at the agreed price. Comstock completed two oil wells on the property that year and began constructing a third well the following year.

Before completing the third oil well, however, Comstock assigned the lease to Rosetta Resources Operating, LP, who continued construction of the third well and began construction of several more.   Unlike Comstock, Rosetta did not purchase its water from Harrison, choosing instead to pump in water from an adjacent property, a neighbor of Harrison.   To do so, Rosetta brought temporary water lines onto Harrison's property to fill storage tanks near the well sites, and then removed the hoses after three to six days.   Rosetta did not contact Harrison about their arrangement to pump in water from his neighbor.

After learning Rosetta was importing his neighbor's water, Harrison filed suit in his individual capacity and as trustee against Rosetta for breach of contract, claiming a Rosetta employee had orally agreed to continue the same arrangement the trust had enjoyed with Comstock—purchasing water from the trust's water wells at fifty cents a barrel.   Harrison further alleged Rosetta had violated a local custom known as the "West Texas Rule," asserting it was customary that an oil and gas lessee would only purchase water from the surface owner of the tract it was operating and not pump in neighboring water unless necessary.   Because bringing the hoses and extra equipment onto the land would have been unnecessary had Rosetta purchased Harrison's water, he also asserted claims for trespass, negligence, and gross negligence, and requested

---

[2] Comstock also agreed to pay the trust a lump sum of $65,000, without admitting liability.

damages and attorneys' fees. He also sought to permanently enjoin Rosetta from using his neighbor's water and sought cancellation of the State's oil and gas lease.

Rosetta filed three motions for summary judgment collectively challenging all of Harrison's claims. In response, Harrison filed an amended petition asserting Rosetta had violated the "accommodation doctrine" by not purchasing his water, thus rendering his well and frac pit useless and unnecessarily causing damage to his property. Rosetta filed a new no-evidence and traditional summary judgment motion addressing the new accommodation doctrine claim. Without specifying the grounds upon which it relied, the trial court granted Rosetta's motions for summary judgment in their entirety.[3] This appeal followed.

## DISCUSSION

We will first address Harrison's claim that the trial court erred in granting summary judgment on his accommodation doctrine claim. Harrison argues his affidavit provided evidence Rosetta violated the doctrine by not purchasing his water, thus prohibiting his existing surface use—pumping and storing water for sale and use in oil and gas operations.

### *Standard of Review*

Both no-evidence and traditional motions for summary judgment are reviewed *de novo*. *Border Demolition & Envtl., Inc. v. Pineda*, 535 S.W.3d 140, 151 (Tex.App.--El Paso 2017, no pet.). If a party moves for summary judgment on both no-evidence and traditional grounds, we first review the no-evidence grounds. *Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). "If the nonmovant fails to produce more than a scintilla of evidence

---

[3] The trial court also granted Rosetta's plea to the jurisdiction as to Harrison individually, thus mooting Rosetta's summary judgment motion as to Harrison.

on the essential elements of a cause of action challenged by a no-evidence motion, there is no need to analyze the movant's traditional grounds for summary judgment." *Id.*, at 680-81. We consider the evidence in the light most favorable to the non-movant and indulge every reasonable inference in that party's favor. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). When the trial court's order does not specify the grounds upon which it relied for its ruling, we must affirm the judgment if any of the theories asserted in the motion are meritorious. *Pineda*, 535 S.W.3d at 151.

### *Analysis*

To obtain relief under the accommodation doctrine, the surface owner has the initial burden to prove: (1) the lessee's use of the surface completely precludes or substantially impairs the existing use; and (2) the surface owner has no reasonable alternative method available to continue his existing use of the surface. *Coyote Lake Ranch, LLC v. City of Lubbock*, 498 S.W.3d 53, 64 (Tex. 2016). If the surface owner can carry that burden, he must then prove that under the circumstances there are "alternative reasonable, customary, and industry-accepted methods available to the lessee which will allow recovery of the minerals and also allow the surface owner to continue the existing use." *Merriam v. XTO Energy, Inc.*, 407 S.W.3d 244, 249 (Tex. 2013). The doctrine is based on the principle that the conflicting mineral and surface estates should act with due regard for each other's rights. *City of Lubbock*, 498 S.W.3d at 63.

The Supreme Court of Texas first created the accommodation doctrine in *Getty Oil Co. v. Jones*. 470 S.W.2d 618 (Tex. 1971). In *Getty*, the surface owner grew crops on his land and had installed a self-propelled sprinkler irrigation system that watered his crops by rotating 1,300 feet of sprinkler pipe above the crops around a central pivot point. *Id.*, at 620. Getty, the mineral

5

lessee, drilled two wells that included elevated "beam-type pumping units." *Id.* The sprinkler system could not pass over the pumps because of their height, thus rendering the system inoperable. *Id.* The surface owner provided witness testimony that because of a labor shortage, no alternative to the automated sprinkler system was realistic. *Id.*, at 622. Another mineral lessee had drilled wells with similar pumping units on the surface owner's land but had placed the pumping units in underground concrete cellars so they would not interfere with the sprinkler system. *Id.*, at 620. Getty, however, refused to place its pumps in cellars, claiming the pumps were necessary to its operations and it had used no more of the surface than reasonably necessary. *Id.*, at 621. In holding for the surface owner, the court stated that while it was well settled the mineral lessee could use as much of the surface as reasonably necessary to produce minerals, "where there is an existing use by the surface owner which would otherwise be precluded or impaired, and where under the established practices in the industry there are alternatives available to the lessee whereby the minerals can be recovered, the rules of reasonable usage of the surface may require the adoption of an alternative by the lessee." *Id.*, at 622. The court noted the record showed the sprinkler system was perhaps the only reasonable method for the surface owner to develop crops, while Getty had alternative pumping options available to it at an additional cost of less than $12,000; thus, Getty was required to accommodate the existing surface use. *Id.*, at 622-23. On rehearing, the court emphasized that the proper question was not whether the surface owner had been inconvenienced by the lessee's use, noting that if the surface owner in *Getty* had had a reasonable alternative to the sprinkler system he would have to yield to Getty's use of the pumps, which were not otherwise unreasonable. *Id.*, at 628 (op. on reh'g).

In *Merriam*, the dispute involved the location of a gas well the surface owner claimed

would interfere with his cattle operation.  *Merriam*, 407 S.W.3d at 247.  Specifically, the surface owner asserted in an affidavit that the well's location interfered with the placement of temporary corrals and stock pens and generally made his cattle-sorting operation almost impossible to accomplish.  *Id*., at 251.  The trial court granted the lessee's motion for a no-evidence summary judgment, and the court of appeals affirmed.  *Id*., 250.  On review, the surface owner claimed the lower courts had misapplied the accommodation doctrine by requiring him to produce evidence that he had no reasonable alternatives for any type of agricultural use of the tract he owned, claiming he was only required to produce evidence he had no reasonable alternatives for his cattle operation, which his affidavit provided.  *Id*.  The affidavit stated, in part:

> [The lessee]'s activities on my property ... prevent me from conducting my cattle operation.... The corral that is located close to the barn is now useless due to the fact the corral cannot be expanded to its full size and usefulness. Right now I can not use the pens because the fence around the well site blocks access to the pens. The wellhead, and other production equipment are located in the area where loading takes place prior to the livestock being moved.... I have attempted to devise a way to re-configure my corrals and catch-pens so as to conduct my cattle operation on my property with the well present. My efforts were unsuccessful.

*Id*., at 251.

The supreme court held that while he was correct, the test should have been whether he could produce evidence he had no alternatives for his then-existing cattle operation, he still had not produced any evidence showing he had no reasonable method to conduct the sorting, working, and loading activities somewhere else on the land.  *Id*., at 251.  The court emphasized that "[e]vidence that the mineral lessee's operations result in inconvenience and some unquantified amount of additional expense to the surface owner does not rise to the level of evidence that the surface owner has no reasonable alternative method to maintain the existing use."  *Id*., at 252. Thus, the surface owner "did not produce evidence sufficient to raise a material fact issue as to

7

part of the initial element on which he had the burden of proof: that he had no reasonable alternative means of maintaining his cattle operations on the 40–acre tract." *Id*.

The issue here is less complicated. Harrison's accommodation doctrine arguments appear to rest on his proposition that because a frac pit was built on his land for use by the former lessee, it unified the use of the land with the oil and gas operations, and when Rosetta chose not to buy his water it substantially interfered with his existing use of the land as a source of water for drilling operations. So, the substantial interference complained of is that the frac pit is no longer profitable because Rosetta is not using it to supply water for its operations. While creative, categorizing a refusal to buy goods produced from the land as "interference" with the land for purposes of the accommodation doctrine would stretch the doctrine beyond recognition.

Harrison insistently refers to Comstock's purchase of his water as an "accommodation," but this confuses the meaning of the word with the test set out by the supreme court.[4] *Getty* requires the plaintiff to show the lessee's actions have substantially interfered with or precluded the existing surface use. *Gety*, 470 S.W.2d at 622. Rosetta's use does not impair the trust's existing surface use in any way, except in the sense that not buying the water has precluded the trust from realizing potential revenue from selling Rosetta its water. While it would have been more convenient and financially beneficial for the trust if Rosetta had purchased the water, inconvenience to the surface estate is also not evidence the owner has no reasonable alternative to maintain the existing use. *Merriam*, 407 S.W.3d at 252. And, when there is a complete absence of evidence of a vital fact, a no-evidence challenge will be sustained. *Merriam*, 407 S.W.3d at

---

[4] Referring to the arrangement as an "accommodation" is also misleading: Comstock agreed to purchase Harrison's water as part of a settlement agreement from a prior lawsuit, not from a general desire to harmonize the use of the land.

8

248. Indeed, were we to hold for Harrison on these facts we would, in effect, be holding that all mineral lessees must use and purchase water from the surface owner under the accommodation doctrine if his water is available for use. The accommodation doctrine does not require such a holding, and we decline Harrison's invitation to stretch it to do so. *Cf. Gulf Oil Corp. v. Walton*, 317 S.W.2d 260, 263-64 (Tex.Civ.App.--El Paso 1958, no writ)(holding that the mineral-estate holder has the right to place his wells where he chooses and is not required to first attempt to use abandoned wells or former drill sites for the sake of convenience to the landowner, as this would be an unwarranted restriction on the mineral-estate owner). Accordingly, having failed to produce evidence supporting his claim of substantial interference with the existing surface use as required by the accommodation doctrine, Harrison's second issue is overruled.

### Negligent Injury to Land

In his remaining issue, Harrison claims the trial court erroneously granted Rosetta's no-evidence and traditional motions for summary judgment on his claims for breach of contract, trespass, negligence, gross negligence, and attorneys' fees. In challenging the trial court's ruling, Harrison only argues some evidence of each element existed to support his negligence claim.

### *Analysis*

To recover damages from the lessee related to its use of the surface, the plaintiff has the burden of alleging and proving either specific acts of negligence or that more of the land was used by the lessee than was reasonably necessary. *Humble Oil & Ref. Co. v. Williams*, 420 S.W.2d 133, 134 (Tex. 1967); *Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 881 (Tex.App.--El Paso 2011, no pet.).

Harrison stated in his affidavit that a reasonable operator would have purchased his water

9

instead of importing water from a neighboring tract. Rosetta, therefore, was negligent or did not accord him "due regard" when it failed to buy his water because if it had done so, new roads, pipelines, storage tanks, or openings in his fence would not have been necessary. The lease, however, authorized Rosetta to use the land for the purposes of "laying pipe lines, building tanks, storing oil and building power Stations, telephone lines and other Structures thereon, to produce save, take care of, treat and transport" oil and gas. Further, while the lease authorized the lessee to use the surface estate's water in its operations, it did not require it. Harrison does not assert Rosetta used more of the surface than reasonably necessary in the manner in which it brought in water for its operations. Harrison also does not allege that Rosetta performed these tasks with less care than that of a reasonable operator, but only that they would have been unnecessary if Rosetta had purchased his water. The right of the mineral lessee to enter the land to extract minerals and all such actions incident thereto is well established in the jurisprudence of this state. *Tarrant County Water Control and Imp. Dist. No. One v. Haupt, Inc.*, 854 S.W.2d 909, 911 (Tex. 1993)(citing *Cowan v. Hardeman*, 26 Tex. 217, 222 (1862)). Under the lease and the common law, Rosetta had the right as the holder of the dominant mineral estate to conduct its operations as it saw fit without deference to the surface owner unless the use interfered with the surface owner's then existing use. *Getty*, 470 S.W.2d at 622. Because Harrison failed to produce evidence Rosetta was either negligent or used more of the surface than was reasonably necessary in importing water for its operations, the trial court properly granted Rosetta's no-evidence motion for summary judgment. *Hansen*, 525 S.W.3d at 680. Accordingly, Harrison's first issue is overruled.

## CONCLUSION

10

Having overruled both issues, the judgment of the trial court is affirmed.


August 8, 2018

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J. (Not Participating)